## The United States vs. Samuel R. Wood.

The defendant was indicted for perjury in falsely taking and swearing "the owner's oath, in cases where goods have been actually purchased," as prescribed by the fourth section of the supplementary collection law of the first of March, 1823. The perjury was charged to have been committed in April, 1837, at the customhouse in New York, on the importation of certain woollen goods in the ship Sheridan. The indictment charged the defendant with having intentionally suppressed the true cost of the goods, with intent to defraud the United States. 2. Charging the perjury in swearing to the truth of the invoice produced by him at the time of entry of the goods, the invoice being false, &c. It appeared by the evidence that the goods mentioned in the entry had been bought by the defendant from John Wood, his father, of Saddleworth, England. No witness was produced by the United States to prove that the value or cost of the goods was greater than that for which they were entered at the customhouse in New York. The evidence of this, offered by the prosecution, was the invoice book of John Wood, and thirty-five original letters from the defendant to John Wood, between 1834 and 1837, showing a combination between John Wood and the defendant to defraud the United States, by invoicing and entering goods at less than their actual cost; that this combination comprehended the goods imported in the Sheridan; and that the goods received by that ship had been entered by the defendant, he knowing that they had cost more than the prices at which he had entered them. This evidence was objected to on the part of the defendant, as not competent proof to convict the defendant of the crime of perjury; and that, if an inference of guilt could be derived from such proof, it was an inference from circumstances, not sufficient, as the best legal testimony, to warrant a conviction. Held, That in order to a conviction, it was not necessary on the part of the prosecution to produce a living witness; if the jury should believe from the written testimony that the defendant made a false and corrupt oath when he entered the goods.

The cases in which a living witness to the corpus delicti of the defendant, in a prosecution for perjury, may be dispensed with, are: All such where a person charged with a perjury by false swearing to a fact directly disproved by documentary or written testimony springing from himself, with circumstances showing the corrupt intent: In cases where the perjury charged is contradicted by a public record, proved to have been well known to the defendant when he took the oath, the oath only being proved to have been taken: In cases where the party is charged with taking an oath contrary to what he must necessarily have known to be the truth, and the false swearing can be proved by his own letters relating to the fact sworn to, or by other written testimony existing and being found in the possession of the defendant, and which has been treated by him as containing the evidence of the fact recited in it.

The letters of the defendant, showing his knowledge of the actual cost of the goods which had been falsely entered by him, are the best evidence which can be given. This evidence is good under the general principle that a man's own acts, conduct, and declarations, when voluntary, are always admissible in evidence against him. If the letters of the defendant showed that the invoice book of the vendor of the goods; containing an invoice of the goods enumerated in the invoice to which the defendant had sworn the owner's oath, in which book the goods were priced higher in the sale of them to the defendant, recognised the book as containing the true invoice; his admission supersedes the necessity of other proof to establish the real price given by him for the goods; and the letters and invoice book, in connection, preponderate against the oath taken by the defendant, making a living witness to the corpus delicti charged in the indictment, unnecessary.

The rule is, that secondary or inferior shall not be substituted for evidence of a higher nature which the case admits of. The reason of that rule is, that an attempt to substitute the inferior for the higher, implies that the higher would give a different aspect to the case of the party introducing the lesser. "The ground of the rule is a suspicion of fraud." But before the rule is applied, the nature of the case must be considered, to make a right application of it; and if it shall be seen that the fact to be proved is an act

[The United States *vs.* Wood.]

of the defendant, which from its nature can be concealed from all others except him whose co-operation was necessary before the act could be complete; then the admissions and declarations of the defendant, either in writing, or to others, in relation to the act, become evidence.

ON a certificate of division from the Circuit Court of the United States for the Southern District of New York.

The defendant was indicted under the revenue collection laws for the crime of perjury, alleged in the indictment to have been committed by him, in swearing to the matters required to be stated in the "owner's oath, in cases where goods, wares, or merchandise have been actually purchased," prescribed by the fourth section of the act supplementary to, and to amend, an act entitled "An Act to regulate the Collection of Duties on Imports and Tonnage, passed 2d March, 1799, and for other purposes," approved March 21st, 1823; that oath having been taken by him on the twentieth day of April, one thousand eight hundred and thirty-seven, upon the importation of woollen goods received by him, in the ship Sheridan, from Liverpool, and entered by him, on the said twentieth day of April, as the owner thereof, at the customhouse in the city of New York.

The indictment contained two counts; the first relating to the entry referred to in the oath, and the second to the invoice produced and exhibited at the time of making the oath, and referred to therein. In each count there were several assignments of perjury; charging, in substance, that the actual cost of the goods in question was not truly stated in the said entry and invoice: that the said goods had, in fact, and within the knowledge of the defendant, cost more than the prices stated in the said entry and invoice: and that, in entering said goods, he had intentionally concealed and suppressed the true cost thereof, with intent to defraud the United States.

In the progress of the trial, it appeared that the goods in question had been shipped to the defendant by his father, John Wood, of Saddleworth, England, in March, 1837; and that in the invoice produced by the defendant at the time of the entry, and referred to in the oath, the goods in question were represented to have been bought by the defendant of said John Wood.

It also appeared, that for several years before and for some time after the importation by the Sheridan, the defendant had been in the habit of receiving woollen goods from his said father, which were entered by the defendant at the customhouse, in the city of New York, upon the oath of defendant, as owner, and upon the production of invoices representing the goods to have been sold to the defendant by the said John Wood.

One package out of every invoice of the goods entered by defendant, including the goods in question, had been inspected by the officers of customs; and all the packages in each invoice had been admitted at the cost prices stated in the invoices, and the duties on such cost price duly paid on the same.

It appeared, from the testimony of the inspectors of the customs,

[The United States *vs.* Wood.]

that the packages designated for inspection, according to their examination and judgment, were not valued in the invoices beyond the actual cost of similar goods imported by other persons.

No witnesses were produced on the part of the prosecution to testify to the actual cost of the goods in question, at the time and place, when and where they were purchased. But the counsel for the United States, to prove the charge in the indictment, to wit, that the goods in question actually cost, to the knowledge of the defendant, more than the prices stated in the invoice, offered and proved certain documentary evidence, consisting of an invoice book of the above named John Wood, and of thirty-five original letters from the defendant, Samuel R. Wood, to the said John Wood, written between April, 1834, and December, 1837; and it was alleged, on the part of the prosecution, that this proof disclosed a combination between Samuel R. Wood and John Wood to defraud the United States, by invoicing and entering the goods shipped at less than their actual cost; and also disclosed that this combination extended to the shipment by the Sheridan, and that the goods received by that vessel had cost, as defendant knew when he entered the same, more than the prices stated in the invoice produced, and in the entry made by him.

The counsel for the defendant objected to the competency of such proof to convict of the crime stated in the indictment; and insisted that, even if an inference of guilt could be derived from such proof, it was an inference from circumstances not sufficient as the best legal testimony to warrant a conviction.

That the legal testimony required to convict of perjury in this case was the testimony of at least one living witness, to disprove the truth of the defendant's oath, as to the actual cost of the goods, at the time and place of exportation.

That until such proof was adduced, the documentary evidence produced by the counsel of the United States did not constitute the legal evidence upon which the defendant could be convicted of the perjury charged in the indictment.

The question being discussed, the judges were divided in opinion on the point:

"Whether it was necessary, in order to convict the defendant of the crime charged in the indictment, to produce, on the part of the prosecution, at least one living witness, corroborated by another witness, or by circumstances to contradict the oath of the defendant."

Which point, upon which the disagreement happened, was stated under the direction of the said Court at the request of the counsel for the parties in the cause, and was certified into the Supreme Court of the United States, pursuant to the act in such case made and provided.

The case was argued by Mr. Gilpin, Attorney General, for the United States; and Mr. Maxwell submitted a printed brief and points, and authorities, for the defendant.

Mr. Gilpin, for the United States.

This indictment arises under the fourth section of the act of 1st March, 1823. 3 Story's Laws, 1882. That section provides for two classes of importations, those made by the owner and purchaser resident here, and those coming to a consignee or agent, resident here, the owner being in a foreign country. When the importation is made by the former, he is required to swear that the entry and invoice, which he presents at the customhouse, contain a just and true account of the actual cost; and that the invoice so presented is the only one which he knows or believes to be in existence. Where the importation is made by a mere consignee, who, of course, in such case, cannot know the actual cost, he is required to swear that the entry and invoices contain a just and true valuation.

The goods which were the subject of this controversy, were goods alleged by the defendant to have been actually purchased by him; and he swore, therefore, that the sum stated by him was their actual cost, and the invoice produced the true and only invoice thereof. What may have been their value is immaterial. It is not denied that the oath was taken; and therefore, the only question on the trial was, whether the defendant's statement was true; that is, was the sum he swore to be the true cost, that which he actually paid; and was the invoice he produced the only invoice which he knew or believed to exist?

It was alleged, on behalf of the United States, that the statement sworn to was not true in either particular; and to sustain this allegation, they offered in evidence the original invoice book of the person in England from whom the defendant made his purchase; and thirty-five original letters of the defendant to that person; all going directly to sustain the truth of the allegation, and to show, by the correspondence between the parties, that the sum stated was not the true cost, nor the invoice produced the true and only invoice. This evidence was objected to as insufficient, solely on the ground that there was an established rule of law which made it indispensable to produce "at least one living witness, corroborated by another witness, or by circumstances," in order to convict the defendant of perjury.

To no branch of legal science, perhaps, have the principles of a sound philosophy been applied so fully as to evidence; and with justice, because if truth be the great end of moral conduct, our first efforts should be to investigate the surest means of attaining it; and justly too, because every thing of character depends on what the designated tribunals shall declare to be the truth. Hence no branch of law rests more on principle than evidence. By it, Courts have been governed in their decisions, and it is not too much to say, that if they should find an arbitrary rule existing, which tended to obstruct the development of truth, no antiquity, no precedent, would induce them to adhere to it.

If, however, there be one rule of evidence more absolute and controlling than all others—to which all others must yield—it is

that the best evidence must always be produced; not one sort or another indiscriminately—not parol or documentary—but whatever, in the particular case, is the best. Suppose a man to be charged with stating falsely what he said to another; the testimony of those who heard what he did say would be the best. Suppose him to be charged with stating falsely what he had written to another; will it be doubted whether the writing itself, or the testimony of one who had read it, is the best? An arbitrary rule, which should sustain the latter in preference to the former, could not stand the test of judicial wisdom for a moment.

In the present case, the defendant has declared on oath, that he has stated truly the sum he actually paid, and produced the only invoice of these goods that he knew of or believed to exist. What is the best evidence on these points? The seller lives in England; the buyer here; they have numerous transactions; their many payments and shipments are blended in a long and general account. What "living witness" could prove the sum paid for these particular goods, or dissect the account to ascertain it? If he could, would his testimony in the eye of reason or the law be the best? Would it be comparable to the letter—the private letter between the parties—which states the sum paid? How could a Court, in these circumstances, take the imperfect testimony of the "living witness" under a technical rule, in preference to the incontrovertible written document; how could it reject what is primary and excellent, for what is secondary and inferior?

But there is no such rule; none such is sustained by any authority cited. The cases referred to establish a sound and just principle; that the oath of the defendant must be contradicted by a preponderance of testimony; that one oath against another is insufficient; that there must be evidence more than equivalent to a single oath. To this extent the general expression used in the cases cited, that "two witnesses are necessary to convict of perjury," was meant to apply. Such facts being usually proved by parol evidence, that charging a person with guilt ought clearly to preponderate. Hence it was said, there must be one oath to balance, and a second to outweigh that of the defendant. But it was early decided, that the outweighing evidence might be made up of circumstances; that admissions in letters, and other written testimony were as good as a second oath. This is admitted in the present case. Does not this yield the whole principle? Does it not admit that the rule is not oath against oath: if the written testimony is better than that offered under the oath? In treason, two witnesses to an overt act are required; yet written declarations of the defendant himself are held to be stronger than the parol statement of a witness. 2 Starkie's Cases, 123, 125. Suppose a defendant in Chancery affirms a fact in direct response to the bill—a case in which the same technical rule exists as in that of perjury—would it be tolerated that he should have the benefit of it, though two, or ten, or fifty of his own letters directly contradict him? The voluntary confessions and

admissions of a party are regarded as the best possible evidence; is it conceivable that in a case of perjury they would, if made in writing, be totally rejected, no matter how clear, repeated, and distinct, unless some "living witness" could be found to prove what is thus voluntarily acknowledged? Suppose this defendant, in an affidavit before some competent tribunal, had stated the actual cost of the goods now in controversy to be twice as much as he has here sworn to; could higher or more satisfactory proof of falsehood be adduced? Yet to such difficulties should we be brought, if we were to set aside the paramount rule, which requires and admits in all cases, the best evidence; and acknowledge in those of perjury an arbitrary one, evidently applicable to particular instances alone.

But to whatever extent the technical rule may have been formerly sustained, it is certainly at variance with later authorities. In the King *vs.* Dane, (5 Barn. and Ald. 941,) it was held, that a defendant may be convicted of perjury, without any other proof than a contrary deposition of his own; for it was said, when he has asserted and denied the same fact by opposite oaths, the one seems sufficient to disprove the other. So in the King *vs.* Knill, (5 Barn. and Ald. 939,) there was no evidence to sustain the prosecution, except proof of contradictory oaths of the defendant on two occasions; and, though it was insisted that mere proof of a contradictory statement on another occasion was insufficient, without the confirmation of a second witness, yet the Court held it to be enough, because the contradiction was by the party himself. In the case of the King *vs.* Mayhew, (6 Carr. and Payne, 315,) a letter of the defendant's was held to be good evidence against him; though in that case there was, besides, the oath of a "living witness." These cases establish the point, that the rule is not an arbitrary and unbending one, setting aside the paramount principle which requires the best evidence; but a rule, to be applied merely in those cases where the evidence is equally balanced, not derived from the acts or admissions of the party itself, and depending exclusively on parol testimony.

On these grounds it is submitted, that the evidence derived from the defendant's letters and invoice books, was sufficient to warrant his conviction; if they were believed by the jury to establish the facts which they were produced to prove.

Mr. Maxwell, for the defendant, in a printed brief.

1. The rule of evidence in perjury is well established. Direct proof of the falsity of the oath by a witness, in addition to the proof of the circumstances affording presumption of guilt, is always required. 1 Roscoe, Crim. Law, 28. 685. 1 Phillips' Ev. 151. 2 Russel, Crim. Law, 479. 3 Starkie's Ev. 1144. Archbold's Crim. Pl. 157. 2 Hawkins, P. C. ch. 46, sec. 2. 4 Black. Com. 358. This rule of the common law has been uniformly adopted, as a rule of good sense and of safety. 1 Dev. Rep. 263. 6 Cowen, 120. 10 Mod. 193. 6 Carr. and Payne, 315. 25 Eng. Com. Law, 415.

1 Nott and M'Cord, 547. 13 Petersdorff, Ab. tit. Perjury, E. Dane, Ab. ch. 210, art. 3, sec. 4. 16 Viner, Perjury, K.

2. The reason of the rule is stated and proved: 4 Black. Com. 358. 3 Starkie, 1144. 13 Petersdorff, 226, tit. Perjury, E. note I.

3. Letters and declarations not on oath, are of no force as proof to convict of perjury, without direct testimony, in the first instance of the falsity of the oath. 6 Car. and Payne, 315. The King *vs.* Carr, Sid. 418 ; referred to in 16 Viner, Perjury, K. proof.

4. A conviction in this case cannot legally be had upon secondary proof, when positive proof is within the power of the prosecutor.

Circumstantial evidence, or the doctrine of presumptive, is never allowed ; except from the nature of the case positive proof cannot be had. 3 Black. Com. 371. 3 Chitty's Black. 291, note.

5. The objection to the legal rule of evidence, is the inconvenience to the District Attorney, in getting the proof required by law.

In answer to this the Court is referred to 4 Black. Com. 350.

Mr. Justice WAYNE delivered the opinion of the Court.

This cause has been sent to this Court, upon a certificate of division of opinion between the judges of the Circuit Court for the Southern District of New York.

The defendant was indicted for perjury, in falsely taking and swearing to the " owners' oath, in cases where goods have been actually purchased ;" as prescribed by the fourth section of the supplementary collection law of the 1st March, 1823. 3 Story's Laws, 1883.

The indictment charged the perjury to have been committed on 20th April, 1837, at the customhouse, in New York, on the importation of certain woollen goods, in the ship Sheridan, from Liverpool, shipped to the defendant by John Wood, of Saddleworth, England. There were two counts in the indictment. The first count charged the perjury in swearing to the truth of the entry of the goods, and averred that the actual cost of the goods was not truly stated in the entry ; that it was known to the defendant that they cost more than was there stated, and that on entering them, he intentionally suppressed the true cost, with intent to defraud the United States. The second count charged the perjury in swearing to the truth of the invoice produced by the defendant at the time of the entry ; and contained similar averments as to its falsity and the intention of the defendant.

In the progress of the trial, it appeared in evidence that the goods in question had been shipped to the defendant by his father, John Wood, of Saddleworth, England, in March, 1837 ; and that in the invoice produced by the defendant at the time of entry, and referred to in the oath, the goods in question were represented to have been bought by the defendant of said John Wood.

It also appeared, that for several years before, and for some time after the importation by the Sheridan, the defendant had been in the habit of receiving woollen goods from his father, which were

entered in the customhouse in the city of New York, upon the oath of the defendant, as owner, and upon the production of invoices representing the goods to have been sold to the defendant by the said John Wood.

It appeared from the testimony of the inspectors of the customs, that the packages designated for inspection, according to their examination and judgment, were not valued in the invoices beyond the actual value of similar goods imported by other persons.

No witnesses were produced on the part of the prosecution, to testify to the actual cost of the goods in question, at the time and place when and where they were purchased. But the counsel for the United States, to prove the charge in the indictment, to wit, that the goods in question actually cost, to the knowledge of the defendant, more than the prices stated in the invoice, offered and proved an invoice book of John Wood, and thirty-five original letters from the defendant, Samuel R. Wood, to the said John Wood, written between April, 1834, and December, 1837; and, it was alleged on the part of the prosecution, that this proof disclosed a combination between Samuel R. Wood and John Wood, to defraud the United States, by invoicing and entering goods, shipped at less than their actual cost; and also disclosed that this combination extended to the shipment by the Sheridan; and that the goods received by that vessel had cost, as defendant knew, when he entered the same, more than the prices stated in the invoice produced, and in the entry made by him.

The counsel for the defendant objected to the competency of such proof to convict of the crime stated in the indictment; and insisted that even if an inference of guilt could be derived from such proof, it was an inference from circumstances not sufficient, as the best legal testimony, to warrant a conviction.

That the legal testimony required to convict of perjury in this case, was the testimony of at least one living witness to disprove the truth of the defendant's oath as to the actual cost of the goods, at the time and place of exportation.

That until such proof was adduced, the documentary evidence produced by the counsel of the United States did not constitute the legal evidence upon which the defendant could be convicted of the perjury, charged in the indictment.

The judges were divided in opinion, " whether it was necessary, in order to convict the defendant of the crime charged in the indictment, to produce, on the part of the prosecution, at least one living witness, corroborated by another witness, or by circumstances, to contradict the oath of the defendant."

The rule upon which the defendant's counsel relies will be found in most of the elementary writers and digests of the law, very much in the same words. Blackstone in his Commentaries, vol. iv. p. 256, says, " The doctrine of evidence upon pleas of the crown, is in most respects the same as that upon civil actions. There are, however, a few leading points, wherein, by several statutes and resolutions, a

2 o 2

difference is made between civil and criminal cases." Then pro ceeding to state the differences made by some of the statutes in cases of treason, followed by a general remark or two; he observes, "but in almost every other accusation, one positive witness is sufficient:" and afterwards, contesting the general accuracy of Baron Montesquieu's reflection upon laws being fatal to liberty, which condemn a man to death in any case upon the deposition of a single witness; he adds, "In cases of indictment for perjury, this doctrine is better founded, and there our law adopts it, for one witness is not allowed to convict a man indicted for perjury, because then there is only one oath against another."

In Viner, 16, Let. K. 328, "Presumption is ever to be made in favour of innocence; and the oath of the party will have regard paid to it till disproved. Therefore, to convict a man of perjury probable or credible evidence, is not enough; but it must be a strong and clear evidence, and more numerous than the evidence given for the defendant, for else it is only oath against oath. A mistake is not enough to convict a man of perjury; the oath must not only be false, but wilful and malicious." 10 Mod. 193.

In Hawkins' Pleas of the Crown, vol. ii. ch. 46, p. 591, ".On an indictment for perjury, the evidence of one witness is not sufficient, because then there would only be one oath against another." Citing 10 Mod. 193, "To convict a man of perjury, there must be strong and clear evidence, and more numerous than the evidence given for the defendant."—"It does not appear to be laid down, that two witnesses are necessary to disprove the facts sworn to by the defendant; nor does that seem to be absolutely requisite. But at least one witness is not sufficient, and, in addition to his testimony, some other independent evidence ought to be adduced."

In Archbold's Criminal Pleading, 157, it is said, upon an indictment for perjury there must be two witnesses; one alone is not sufficient, because there is in that case only one oath against another. 10 Mod. 193. But if the assignment of perjury be directly proved by one witness, and strong circumstantial evidence be given by another, or be established by written documents, this would perhaps be sufficient; although it does not appear as yet to have been so decided. Regina vs. Lea, M. and S. 2 Russel, 545. Also, if the perjury consist in the defendant having sworn contrary to what he had before sworn upon the same subject, this is not within the rule mentioned; for the effect of the defendant's oath in the one case is neutralized by his oath in the other; and proof by one witness will therefore make the evidence preponderate. In 7 Dane's Abridgment, 82, citing Blackstone, it is said, "It has been decided, that one witness is not allowed to convict a man indicted for perjury, because there is only oath against oath."—"On a trial for perjury, the oath will be taken as true, until it can be disproved; and therefore the evidence must be strong, clear, and more numerous, on the part of the prosecution than that on the defendant's part; for the law will not permit a man to be convicted of perjury, unless

there are two witnesses at least." For which is cited 1 Bro. Ch. Rep. 419. Crown C. C. 625, 626.

In the second volume of Starkie's Law of Evidence it is said, "It is a general rule, that the testimony of a single witness is insufficient to warrant a conviction on a charge of perjury. This is an arbitrary and peremptory rule, founded upon the general apprehension that it would be unsafe to convict in a case where there is merely the oath of one man to be weighed against that of another. Nevertheless, it very frequently happens, in particular cases, that the testimony of a single witness preponderates against the limited testimony of many." In part iii. 399, the same writer says, "So in the case of perjury, two witnesses are essential; for otherwise there would be nothing more than the oath of one man against that of another, upon which the jury could not safely convict."

In Russel on Crimes and Misdemeanours, 544, it is said, "the evidence of one witness is not sufficient to convict the defendant on an indictment for perjury, as in such case there would be only one oath against another." 10 Mod. 393. But Russel gives several exceptions to the application of the rule, resting upon principles clearly covering the conclusion to which the Court has come upon the question before it.

In Phillips' Evidence, the rule is also given as it is laid down in other writers; and the case in 10 Mod. 193, is referred to. It may be found, too, repeated in many of the volumes of the English and American reports, as well as in the case of the State *vs*. Hayward, 1 Nott and M'Cord's Reports, cited by the defendant's counsel. The cases collected in 13 Petersdorff's Com. Law, affirm the same rule. It must be conceded, no case has yet occurred in our own, or in the English Courts where a conviction for perjury has been had without a witness speaking to the corpus delicti of the defendant, except in a case of contradictory oaths by the same person. But it is exactly in the principle of the exception, which is by every one admitted to be sound law; that this Court has found its way to the conclusion that cases may occur when the evidence comes so directly from the defendant that the perjury may be proved without the aid of a living witness.

These citations have been made with the view of placing the position contended for by the defendant's counsel in its most positive form; and to show that the conclusion to which the Court has come, has not been without a due consideration of the rule.

It is said to be an inflexible rule of the common law, applicable to every charge of perjury; that it cannot be changed but by the legislative power: that until some statutory change is made, Courts must enforce it: that though other kind of evidence, and that relied upon by the prosecution in this case, may establish a case of false swearing, it will not suffice to convict for perjury: in short, that a living witness is in every case indispensible.

We do not think any change in the rule necessary. The question is, when and how the rule is to be applied, that it may not, from a

technical interpretation, or positive undeviating adherence to words, exclude all other testimony as strong and conclusive as that which the rule requires. It is a right rule, founded upon that principle of natural justice which will not permit one of two persons, both speaking under the sanction of an oath, and, presumptively, entitled to the same credit, to convict the other of false swearing, particularly when punishment is to follow.

But in what cases is the rule to be applied? To all, where to prove the perjury assigned, oral testimony is exclusively relied upon? Then oath against oath proves nothing, except that one of the parties has sworn falsely as to the fact to which they have sworn differently. There must then be two witnesses, or one witness corroborated by circumstances, proved by independent testimony. If we will but recognise the principle upon which circumstances in the case of one witness are allowed to have any weight, that principle will carry us out to the conclusion, that circumstances, without any witness, when they exist in documentary or written testimony, may combine to establish the charge of perjury; as they may combine, altogether unaided by oral proof, except the proof of their authenticity, to prove any other fact connected with the declarations of persons or business of human life.

That principle is, that circumstances necessarily make up a part of the proofs of human transactions; that such as have been reduced to writing in unequivocal terms, when the writing has been proved to be authentic, cannot be made more certain by evidence aliunde; and that such as have been reduced to writing, whether they relate to the declarations or conduct of men, can only be proved by oral testimony.

If it be true, then—and it is so—that the rule of a single witness, being insufficient to prove perjury rests upon the law of a presumptive equality of credit between persons, or upon what Starkie terms, the apprehension that it would be unsafe to convict in a case where there is merely the oath of one man to be weighed against that of another; satisfy the equal claim to belief, or remove the apprehension by concurring written proofs, which existed, and are proved to have been in the knowledge of the person charged with the perjury when it was committed, especially if such written proofs came from himself, and are facts which he must have known, because they were his own acts; and the reason for the rule ceases. It can only then, be an arbitrary and peremptory rule; as Starkie says it is, when it is applied to cases in which oral testimony is exclusively relied upon to prove perjury.

And such, we will perceive to have been the apprehension of this rule; and if we will scrutinize its chronology, we cannot fail to see how truth has grown as cases have occurred for its application.

At first two witnesses were required to convict in a case of perjury; both swearing directly adversely from the defendant's oath. Contemporaneously with this requisition, the larger number of witnesses on one side or the other prevailed. Then, a single witness

corroborated by other witnesses, swearing to circumstances bearing directly upon the imputed corpus delicti of a defendant, was deemed sufficient. Next, as in the case of Rex *vs.* Knill, 5 B. and A. 929, note; with a long interval between it and the preceding; a witness who gave proof only of the contradictory oaths of the defendant on two occasions, one being an examination before the House of Lords, and the other an examination before the House of Commons, was held to be sufficient. Though this principle has been acted on as early as 1764, by Justice Yates, as may be seen in the note to the case of the King *vs.* Harris, 5 B. and A. 937, and was acquiesced in by Lord Mansfield, and Justices Wilmot and Aston. We are aware that in a note to Rex *vs.* Mayhew, 6 Carrington and Payne, 315, a doubt is implied concerning the case decided by Justice Yates; but it has the stamp of authenticity, from its having been referred to in a case happening ten years afterwards, before Justice Chambre, as will appear by the note in 6 B. and A. 937. Afterwards, a single witness, with the defendant's bill of costs (not sworn to) in lieu of a second witness, delivered by the defendant to the prosecutor, was held sufficient to contradict his oath; and in that case, Lord Denman says, "a letter written by the defendant, contradicting his statement on oath, would be sufficient to make it unnecessary to have a second witness." 6 Carr. and Payne, 315. All of the foregoing modifications of the rule, will be found in 2 Russell, 544, and that respecting written documents is stated in Archbold, 157, in anticipation of the case in Carr. and Payne, 315.

We thus see that this rule in its proper application, has been expanded beyond its literal terms, as cases have occurred in which proofs have been offered equivalent to the end intended to be accomplished by the rule.

In what cases, then, will the rule not apply? Or in what cases may a living witness to the corpus delicti of a defendant, be dispensed with, and documentary or written testimony be relied upon to convict? We answer, to all such where a person is charged with a perjury, directly disproved by documentary or written testimony springing from himself, with circumstances showing the corrupt intent. In cases where the perjury charged is contradicted by a public record, proved to have been well known to the defendant when he took the oath; the oath only being proved to have been taken. In cases where a party is charged with taking an oath, contrary to what he must necessarily have known to be the truth, and the false swearing can be proved by his own letters, relating to the fact sworn to; or by other written testimony existing and being found in the possession of a defendant, and which has been treated by him as containing the evidence of the fact recited in it.

Let us suppose a case or two, in illustration of the positions just laid down.

A defendant in two answers to a bill in equity, swears unequivocally to a fact, and as positively against it. A document is produced executed by himself, decisive of the truth of the fact. In

such a case can a living witness be wanted; or could any number of living witnesses prove, more certainly, the false swearing than it would be proved by the document and the defendant's contradictory oaths? Or, take the case of defendant being sued in equity, to recover from him the contents of a lost bond. In answer to a call upon him to say whether he had or had not made such a bond, he swears that he never had made such a bond. The bond is afterwards found and proved; is not his answer, then, upon oath, disproved by a circumstance, stronger than words can be, coming from the mouth of man?

Again, suppose a person, in order to obtain a right under a statute, is required to take an oath to a fact which is the mutual act of himself and another, and which from its nature is unequivocal. He swears contrary to the fact. Subsequently his letters written before and after his oath are found; which disclose not only the real fact, but a general design to misrepresent facts of the same kind, and a book or other written paper is produced, bearing directly upon the fact, from its being the original of the transaction reduced to writing contemporaneously with its occurrence, and recognised by the defendant to be such, though it is in the handwriting of another; will not the defendant's recognition of it, with the auxiliary evidence of the letters, without a living witness to speak directly to the corpus delicti of the defendant, justify the whole being put before a jury, in a case of perjury; for them to decide whether the defendant has sworn falsely and corruptly? In such a case, if the person was called in whose handwriting the book or other written paper was, it might happen that he had only been the recorder of the transaction at the instigation of one of the parties to it, without his ever having had any communication with the other respecting its contents. The witness then would only prove so much, without proving any thing which bore upon the charge of false swearing. But when the defendant himself has recognised the book or writing as evidence of his act—and such recognition is proved—there is no rule of evidence which requires other proof, beyond his admission, to prove the contents of the book or paper to be true. But suppose the book or written paper to be also in the handwriting of the defendant, and that several of his letters confirm the fact, that he has sworn contrary to the contents of the first—as all the evidence comes from himself—we cannot doubt it would be right to place the whole before a jury, for it to judge what was the truth of the fact, and whether the defendant had sworn falsely and corruptly.

We will now proceed to examine the case before us, to see if it fall within the principles and illustrations we have given.

The defendant is indicted under the act of Congress of 1st March, 1823, 3 Story, 1883, for falsely and corruptly taking the owners' oath in cases where goods have been actually purchased. It must be kept in mind, that this oath can only be taken in cases of goods imported from foreign countries. It places the importer, then, in a

condition to commit fraud in the misrepresentation of the price he has given for goods; with only an accidental possibility on the part of the United States, ever being able to detect it by the evidence of the person from whom the importer has made the purchase.

The importer is required to swear that the invoice produced by him, contains a just and faithful account of the actual cost of the goods; and that he has not in the invoice concealed or suppressed any thing, whereby the United States may be defrauded of any part of the duties lawfully due on the goods, &c. The oath does not require from the owner the value of the goods, but the cost to him. There is nothing in it relating to the quality of the goods, but simply the cost or price paid by the importer, as owner. The defendant in his entry did it upon an invoice sworn to by him, to contain a just and faithful account of the actual cost; that there was nothing in it concealed or suppressed.

He is charged with having sworn falsely in respect to the cost of the goods contained in the invoice, by which he made his entry of them. To maintain the charge, the United States must prove that he paid a larger price. The best evidence, it is admitted, must be introduced to establish that fact. What is the best evidence in respect to its quality, as distinguished from quantity or measure; it being in the former sense that the best evidence is required? It is, that secondary or inferior evidence shall not be substituted for evidence of a higher nature, which the case admits of. The reason of the rule is, that an attempt to substitute the inferior for the higher, implies that the higher would give a different aspect to the case of the party introducing the lesser. 1 Russel, 437. "The ground of the rule is a suspicion of fraud." But before the rule is applied, the nature of the case must be considered, to make a right application of it; and if it shall be seen that the fact to be proved is an act of the defendant, which, from its nature, can be concealed from all others except him whose co-operation was necessary before the act could be complete, then the admissions and declarations by the defendant, either in writing or to others, in relation to the act, become evidence. It is no longer a question of the quality but of the quantity of evidence, when it is said, as it is in this case, that his associate in the transaction should be introduced. For instance: we will suppose that the letters of the defendant in this case speak of the cost of the goods in the invoice, to which the defendant swore, and that they show the goods did cost more than they are rated at in the invoice; the quality of the evidence is of that character that it cannot be inferred that superior evidence exists, to make that fact uncertain. Unless such inference can be made, the evidence offered is the best evidence which the nature of the case admits. The evidence is good under the general principle that a man's own acts, conduct, and declarations, where voluntary, are always admissible in evidence against him.

So in respect to the invoice book of John Wood, containing an invoice of the goods enumerated in the invoice to which the defend

ant swore the owners' oath; in the first of which the goods are priced higher in the sale of them to the defendant. If the letters show the book to have been recognised by the defendant as containing the true invoice, his admission supersedes the necessity of other proof to establish the real price given by him for the goods; and the letters and invoice book, in connection, preponderate against the oath taken by the defendant, making a living witness to the corpus delicti, charged in the indictment, unnecessary. All has been done in the case that can be done to intercept such evidence as would tend to prejudice or mislead; and the case must then be confided to the good sense and integrity of the jury to determine upon the sufficiency of the evidence to convict: the Court charging the jury, that the evidence offered is of that character which supersedes the necessity of introducing a living witness to prove the perjury charged in the indictment.

Let it then be certified to the Court below, as the opinion of this Court, that in order to convict the defendant of the crime charged in the indictment, it is not necessary on the part of the prosecution to produce a living witness; if the jury shall believe the evidence from the written testimony sufficient to establish the charge that the defendant made a false and corrupt oath as to the cost of the goods imported in the Sheridan, enumerated in the invoice, upon which the defendant made an entry, by taking the owners' oath at the customhouse.

Mr. Justice THOMPSON, dissenting.

The question certified in the record is, whether it was necessary, in order to convict the defendant of perjury, to produce, on the part of the prosecution, at least one living witness, corroborated by another witness, or by circumstances, to contradict the oath of the defendant.

The rule, as we find it laid down in the elementary books on this subject, is, that to convict a party of the crime of perjury, two witnesses are necessary to contradict him as to the fact upon which the perjury is assigned: and the reason assigned for the rule is, that if one witness only is produced, there will only be one oath against another. This rule, however, in the early adjudged cases, was so modified as to require but one living witness, corroborated by circumstances, to contradict the oath of the defendant; and with this modification the rule has remained until the present day.

In the present case, the fact on which the perjury was assigned related to the actual cost of the goods, at the time and place of exportation. This was a simple question of fact, susceptible of proof by witnesses, like any other matter of fact. There was nothing, therefore, growing out of the nature of the inquiry, that rendered the proof by witnesses impossible, so as to take the case out of the rules of evidence, in relation to the crime of perjury. No living witness was produced to contradict the oath of the defendant at the customhouse, as to the original cost of the goods. His letters and

certain invoice books were produced to sustain the indictment; and these might have been sufficient to warrant the jury in convicting the defendant, if such evidence is sufficient to convict a party of the crime of perjury, without the production of at least one living witness. It is, as has been already mentioned, laid down in the books as a technical rule in perjury, that there must be at least one witness and corroborating circumstances to convict of this crime: that there must be oath against oath, as to the corpus delicti.

When the books speak of a witness, they always mean oral testimony. It would hardly be considered as correct legal language, to call a letter of the defendant a witness against him. It was evidence, but not evidence by a witness. The rule, as originally laid down in the elementary treatises on evidence, requiring two witnesses to contradict the party on the matter assigned as perjury, was so modified or relaxed as not to require two witnesses to disprove the facts sworn to by the defendant. But if any material circumstances are proved by other witnesses, in confirmation of the witness who gives the direct testimony of perjury, it may turn the scale, and warrant a conviction. And in England one case occurred, as reported in a note in the seventh volume of the English Common Law Reports, page 306, where the evidence consisted of the contradictory oaths of the party accused, upon the same matter of fact in which the perjury was assigned. It was held, that in such case there was oath against oath, and the perjury might be assigned upon either; and that it might be left to the jury to judge of the motive. The authority of this case, however, has been very much doubted. But the present case does not come within that rule, even if we are disposed to follow the English Courts on that subject; for the letters of the defendant cannot certainly be said to be evidence under oath, so as to charge him with contradictory oaths on the fact assigned as perjury. Rules of evidence are rules of law, applicable to the rights of persons as well as to the rights of property; and parties are entitled to have their rights tested and decided by such rules, as much in one case as the other. This rule, however, in perjury, being a technical rule, may in many cases be difficult if not impracticable to be carried into execution. If it falls within the proper province of the Court entirely to dispense with the rule, and put the evidence in perjury upon the same footing as other criminal offences, I should not be disposed to dissent from it; if, as a new rule, it was made to operate prospectively. But if it is intended to affirm the doctrine urged at the bar, that no such rule of evidence ever existed, as to require in the case of perjury at least one living witness, and circumstances in corroboration of his oath, in contradiction to the party charged upon the matter assigned as the perjury; it would, in my judgment, be at variance with a rule universally laid down in all the elementary treatises on the subject of evidence; and as yet never dispensed with, or ever called in question in any adjudication that has fallen under my notice. And that this rule still exists in the English Courts, is shown by the late case of

[The United States *vs.* Wood.]

Rex *vs.* Mayhew, 6 Carr. and Payne, 315, decided in the year 1834. The perjury in that case was alleged to have been committed by the defendant (who was an attorney) in an affidavit made by him, to oppose a motion made in the Court of Chancery on behalf of the prosecutor, to refer the defendant's bills of costs 'for taxation. To prove the perjury, one witness was called : and in lieu of a second witness, it was proposed to put in the defendant's bill of costs, delivered by him to the prosecutor. It was objected that this was not sufficient, as the bills had not been delivered by the defendant on oath. But Denman, Chief Justice, said, " I have quite made up my mind that the bill delivered by the defendant is sufficient evidence, or that even a letter written by the defendant, contradicting his statement on oath, would be sufficient to make it unnecessary to have a second witness."

There was no intimation here, that a letter, or any number of letters, from the defendant, contradicting his statement under oath, would dispense with the technical rule in perjury, requiring at least one witness, and corroborating circumstances. The question was, as to what circumstances or evidence would dispense with a second witness.

In the present case, it may be difficult and perhaps impracticable to procure any living witness to contradict the oath of the defendant. But it is more congenial with the humane principles of our criminal law, that a guilty man should escape, than to convict him upon evidence heretofore considered as insufficient, according to what is admitted to have been the settled rule of law. Answering the question put in the record in the negative, is abolishing that rule and introducing one entirely new ; and putting the crime of perjury on the same footing as any other criminal offence, with respect to the evidence necessary to convict the accused. If there are any great public considerations calling for such an innovation upon the rule of evidence in cases like the present, let it be altered by the proper tribunal, and under the general rules of evidence applicable to other criminal cases. The evidence derived from the letters of the defendant, is perhaps the best evidence the nature of the case will admit of. But it is an entire misapplication of this general rule to the present case, if there is a special and technical rule in the case of perjury that there must be at least one living witness, and corroborating circumstances, *to convict of that crime.* I do not feel myself authorized to dispense with what I understand to be admitted, the heretofore settled rule of evidence, which I consider a rule of law, in the case of perjury ; and to apply this new rule to the present case by giving it a retrospective operation.

I am accordingly of opinion, that the question put in the record, ought to be answered in the affirmative.

*Note.*—1 Roscoe's Crim. Law, 28. 685. 1 Phil. Ev. 151. 2 Russel's Crim. Law, 479. 3 Starkie's Ev. 1144. Archbold's Crim. Plead. 157. 2. Har. Pl. C. ch. 46, sec. 2. 4 Blackstone's Com. 358.

[The United States *vs.* Wood.]

10 Mod. 193.  6 Cowen, 120.  6 Carr. and Payne, 315.  7 Com. Law Rep. 306, and notes.  25 Com. Law Rep. 415.  13 Petersdorff, Ab. tit. Perjury, E.  Dane, Ab. Ch. 210, art. 3, sec. 4.  Sid. 418.  Cited, 16 Viner, Perjury, K.  1 Nott and M'Cord, 547.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and on the point and question on which the judges of the said Circuit Court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of Congress in such cases made and provided, and was argued by counsel.   On consideration whereof, it is the opinion of this Court, that in order to convict the defendant of the crime charged in the indictment, it is not necessary on the part of the prosecution, to produce a living witness, if the jury shall believe the evidence from the written testimony sufficient to establish the charge, that the defendant made a false and corrupt oath, as to the cost of the goods imported in the Sheridan, enumerated in the invoice upon which the defendant made an entry by taking the owners' oath at the customhouse. Whereupon it is ordered and adjudged by this Court, that it be so certified to the said Circuit Court, accordingly.