## UNITED STATES v. NESSANBAUM.

### No. 10940.

United States Court of Appeals
Third Circuit.

Argued March 19, 1953.

Decided June 10, 1953.

94

Joseph Varbalow, Camden, N. J., for appellant.

Walter S. Anderson, Asst. U. S. Atty., Newark, N. J. (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., W. Thomas McGann, Asst. U. S. Atty., Camden, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

On April 8, 1952, an indictment was filed in the court below charging the defendant, Hyman Nessanbaum with perjury. 18 U. S.C. § 1621.[1] The indictment stated that Nessanbaum, appearing as a witness in the case of United States v. Mario De Carlo on or about January 29, 1952, in the United States District Court of New Jersey, knowingly and willfully gave false testimony under oath as follows:

"Upon being questioned; 'Do you mean to say you can't now tell us, either yes, or no, whether this man * * * [De Carlo] is the man that rented your barn?' [2]

"The defendant, Hyman Nessanbaum, did answer and swear; 'No, I can't.'"

It was stipulated at the trial by Nessanbaum that at the time of his alleged perjurious statement he had been duly sworn and that the matter as to which he was testifying was material to the proceeding against De Carlo. Nessanbaum pleaded not guilty and was tried before a jury as a co-defendant with his wife against whom a separate indictment for perjury had been filed. At

1. As follows: "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

2. This structure is referred to variously in the testimony as a "chicken house," a "garage," and "the outbuilding." It appears, however, that it was the only building on the defendant's premises other than the house occupied by the defendant himself. The defendant's answer is not ambiguous in this regard.

the close of the prosecution's evidence both defendants moved for judgment of acquittal. The court denied this motion as to Nessanbaum but granted it as to his wife. The jury then found Nessanbaum guilty of perjury as charged. The court below, after argument, denied Nessanbaum's motion for a new trial, and sentenced the defendant to six months in prison. He appeals.

Nessanbaum's position is that the court below erred in denying his motion for judgment of acquittal and for a new trial for the reason that the government's evidence was insufficient to satisfy the established requirements of proof in perjury cases. We will consider the case as if Nessanbaum had raised properly in this court the issues presented by both motions. Before examining Nessanbaum's contentions in connection with the evidence in this case we will restate briefly the controlling principles of law.

■ The standard of proof required to establish perjury in the federal courts has been clearly stated by this court: "The rule of evidence in perjury cases presents an almost unique exception to the general rule that evidence which is sufficient to convince the jury of the defendant's guilt beyond a reasonable doubt is sufficient to sustain a conviction. Originally it was necessary in order to sustain a conviction for perjury that the falsity [3] of the oath be proved by the sworn testimony of two or more witnesses. This rule was early modified so as to permit a conviction upon the sworn testimony of one witness if that testimony was supported by proof of corroborative

circumstances." United States v. Palese, 3 Cir., 1943, 133 F.2d 600, 602. See also Weiler v. United States, 1945, 323 U.S. 606, 607, 65 S.Ct. 548, 89 L.Ed. 495 and Hammer v. United States, 1926, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118.

The reasons for this strict standard are set forth fully in the leading Supreme Court decision on the subject, United States v. Wood, U.S.1840, 14 Pet. 430, 10 L.Ed. 527. The Court there noted that in cases where oral testimony of a single witness is relied upon to establish the falsity of a defendant's statement under oath, there is merely one oath contradicting another. Since both are presumptively entitled to credit, the jury was thought to have no sufficient basis for preferring the testimony of the witness over the oath of the defendant. A conviction may not follow without further proof, either by another witness or by corroborating circumstances.[4] The present usefulness of this rule, exceptional even under the protections offered the accused in all criminal cases, has been questioned, Goins v. United States, 4 Cir., 1938, 99 F.2d 147, 149, but the rule at least serves to protect those giving honest statements under oath from spiteful and unfounded perjury prosecutions. See Weiler v. United States, supra, 323 U.S. at page 609, 65 S.Ct. 548. The absence of legislation indicates that the standard is sound and has been found satisfactory in practice. Hammer v. United States, supra, 271 U.S. at page 627, 46 S.Ct. 603.

■ This standard has also been applied to the situation where the evidence reveals only inconsistent statements made

---

**3.** We take it to be the true rule that the *falsity* of the oath must be proved in accordance with this standard. See United States v. Hall, D.C.1890, 44 F. 864, 869-70, 10 L.R.A. 324. There are cases, somewhat misleading in our view, where the standard was said to have been satisfied following testimony by two witnesses, or by one witness plus corroborating circumstances, as to the *fact* only of the swearing under oath, if there was also some evidence of falsity. Smith v. United States, 6 Cir., 1948, 169 F.2d 118; Holy v. United States, 7 Cir., 1921, 278 F. 521.

**4.** The distinction is clear between the tes-

timony required of the "witness" (or witnesses) under this standard and "corroborating circumstances." The witness must testify of his own knowledge that the defendant's sworn statement was false. The common situation is where the defendant has given a false version of a transaction with another person and the other person refutes him. See, e.g., Vetterli v. United States, 9 Cir., 1952, 198 F.2d 291; United States v. Palese, 3 Cir., 1943, 133 F.2d 600. Corroborating circumstances, on the other hand, merely support the inference that the defendant was lying. These circumstances, of course, may also be proved by oral testimony.

by the defendant,· both of the statements, or only the alleged perjurious one, having been ·given under oath. *Phair v. United States*, 3 Cir., 1932, 60 F.2d 953; *McWhorter v.· United States*, 5 Cir., 1952, 193 F.2d 982. Again the jury is thought to have no sufficient basis for determining which statement was false.[5] It makes no difference that one of the inconsistent statements was repeated to several witnesses, all of whom testify to what the defendant said to them, or that one statement was accompanied by an admission that the other was· false. Such an admission ·is implicit in the second of any two inconsistent statements, and the admission itself may be false. See *McWhorter v. United States*, supra, 193 F.2d at pages 984–985. But where the defendant under oath at his trial for perjury admits the falsity of the alleged perjurious statement, the federal court will regard this admission as the practical equivalent of a plea of guilty and will relieve the prosecution of further proving its case. *United States v. Buckner*, 2 Cir., 1941, 118 F.2d 468.

█ There is one situation, however, where the strict standard is not applicable. As this court has recognized, "It has also been held that the production of documentary or written testimony springing from the defendant himself may take the place of a living witness. * * * But the necessity for some corroboration has never been eliminated." *United States v. Palese*, supra, 133 F.2d at page 602. The case so holding is the leading case of *United States v. Wood*, supra. In that case, 14 Pet. at page 440, the Supreme Court said: "If we will but recognize the principle upon which circumstances, in the case of one witness, are allowed to have any weight, that principle will carry us out to the conclusion, that circumstances, without any witness, when they exist in documentary or written testimony, may combine to establish the charge of perjury; as they may combine, altogether unaided by oral proof, except the proof of their authenticity, to prove any

other fact connected with the declarations of persons, or business of human life. That principle *is*, that circumstances necessarily make up· a part of the proofs of human transactions; that such as have been reduced to writing in unequivocal terms, when the writing has been proved to be authentic, cannot be made more certain by evidence *aliunde;·* and that such as have been reduced to writing, whether they relate to the declarations or conduct of men, ·can only be proved by oral testimony."

The Supreme Court further reasoned, 14 Pet. at page 441: "We thus see that this rule [the strict standard], in its proper application, has been expanded beyond its literal terms, as cases have occurred in which proofs have been offered equivalent to the end intended to be accomplished by the rule. In what cases, then will the rule not apply? Or in what cases may a living witness to the *corpus delicti* of a defendant, be ,dispensed with, and documentary or written testimony be relied upon to convict? We answer, to all such· where a person is charged with a perjury, directly disproved by documentary or written testimony springing from himself, with circumstances showing the corrupt intent. In cases where the perjury charged is contradicted by a public record, proved to have been well known to the defendant when he took the oath; the oath only being proved to have been taken. In cases where a party is charged with taking an oath contrary to what he must necessarily have known to be the truth, and the false swearing can be proved by his own letters, relating to the fact sworn to; or by other written testimony,..existing and being found in the possession of a defendant, and which has been treated by him as containing the evidence of the fact recited in it."

The Court went on to hold that the defendant could be properly convicted for taking a perjurious importer's oath as to the cost of goods imported where the only evidence was the invoice book of the seller to-

---

5. In the federal courts, the United States has the burden of proving which of the two statements is false. In New York, however, where both statements are given under oath, in willful contradiction of each other, an indictment may be found without proof as to which .statement is true. N.Y.Penal Law, McK. Consol.Laws. c. 40, § 1627–a.

gether with the importer's letters to the seller, if these letters were found to recognize the invoice book as recording the actual cost of the goods.

 Few cases have arisen since the Wood decision involving the use of documentary evidence to establish perjury. Those which we have found have approved the Wood rule: *e. g.*, United States v. Mayer, D.C.Or.1865, 26 Fed. page 1225 Cas. No. 15,753. The Wood case has been interpreted, however, to require documentary evidence as strong and convincing as where oral testimony is relied upon. See Sullivan v. United States, 1 Cir., 1908, 161 F. 253, holding the evidence insufficient where the document was the unsworn statement of a third person. In one case a conviction for perjury in denying previous convictions of crime was sustained solely on production of the record of a prior conviction. Holy v. United States, 7 Cir., 1921, 278 F. 521. In another case the conviction was sustained where the alleged perjurious statement was inferentially contradicted by a business document furnished by the defendant to a third person. Jacobs v. United States, 6 Cir., 1929, 31 F.2d 568; cf. Smith v. United States, 6 Cir., 1948, 169 F.2d 118. The Jacobs case relied squarely upon the Wood decision.

Coming now to the application of these principles to the instant case: The trial judge instructed the jury that the sole question before it was whether or not at the time Nessanbaum gave his answer under oath to the question put to him at the trial of De Carlo he was actually able to identify De Carlo as the man who had rented his "barn." The judge then correctly charged the jury concerning the necessity of two witnesses, or one witness plus corroborative circumstances, to justify a verdict of guilty. The charge further cautioned the jury that "To convict a person of perjury, probable or credible evidence is not enough. It must be strong and clear." [6] And since judgment of acquittal had already been given for Mrs. Nessanbaum the judge added: "* * * you are not to consider in your deliberations anything that Mrs. Nessanbaum said in this matter, unless she said it, according to your recollection, in the presence of Mr. Nessanbaum, and unless coupled with that it required an answer on his part."

 In convicting Nessanbaum the jury must have determined that he was able to make the requested identification of De Carlo and that his answer was therefore false. But not one witness was called who testified of his own knowledge either that Nessanbaum had in fact rented his "barn" to De Carlo or that he knew De Carlo as the tenant in his "barn." [7] Five of the six

---

6. This portion of the charge is not apt. It is probable that the court meant to charge that the evidence received on behalf of the United States should be not only such as to prove the guilt of the defendant beyond a reasonable doubt but also of a kind required to establish perjury under the decisions which we have cited in the body of this opinion. This portion of the charge does not constitute reversible error, however, for it is more favorable to the defendant than he was entitled to.

7. There is some difficulty in construing the question asked Nessanbaum. We think it cannot be interpreted as a general inquiry, "Do you know Mr. De Carlo?" De Carlo was being prosecuted for running a still in a specific building allegedly rented to him by Nessanbaum. We think the question necessarily contained two elements: the fact of De Carlo's rental of the "barn," and Nessanbaum's

acquaintance with De Carlo as his tenant. Conceivably De Carlo could have been a person known by sight to Nessanbaum but could have rented the "barn" from Mrs. Nessanbaum without her husband's knowledge. Or Nessanbaum could have himself arranged for the rental but have seen De Carlo so seldom thereafter that he had become unable to identify him. In proving Nessanbaum's perjury, therefore, the evidence would have had to prove both that Nessanbaum had rented his "barn" to De Carlo and that Nessanbaum was so acquainted with De Carlo that he could have identified him when asked to do so.

Interpretation as a more general inquiry might make the question and answer, taken alone, immaterial to the proceeding against De Carlo. This interpretation would also, of course, lessen the government's burden of proof. Cf. United States v. Seavey, 3 Cir., 1950, 180 F.2d 837.

witnesses called by the United States were government agents whose first contact with Nessanbaum was in connection with their investigation of De Carlo's alleged still in the "barn." Although some of the agents had seen De Carlo alone on Nessanbaum's premises near the "barn," no agent had ever seen Nessanbaum and De Carlo talking or doing anything together. The agents did display a picture of De Carlo to Nessanbaum and his wife and inquired whether the Nessanbaums knew De Carlo and had rented their "barn" to him. Nessanbaum and his wife, in a signed statement given to the agents, both answered these questions in the affirmative. This statement and De Carlo's picture were introduced into evidence, but we do not think that this qualifies the agents to testify *of their own knowledge* that Nessanbaum did know De Carlo as his tenant. Later, during De Carlo's trial, two of the agents had an opportunity to observe Nessanbaum as he in turn observed De Carlo and assured the agents that he knew De Carlo. But we think this amounts only to a repetition of Nessanbaum's signed admission that he knew De Carlo as his tenant. It appears that had there been the testimony of one living witness of the sort required by the standard of proof, Nessanbaum's admissions and the other testimony in the case would have furnished sufficient corroborating evidence to support a conviction. Cf. Vetterli v. United States, 9 Cir., 1952, 198 F.2d 291. But the testimony of such a witness was lacking in this case.

The sixth government witness was De Carlo himself. He, above all others, could have laid bare any falsity in Nessanbaum's answer. But his testimony was limited to his identification of the photograph displayed to the Nessanbaums by the government agents. He was asked no questions bearing on his alleged rental of Nessanbaum's "barn."

There remains for discussion the contention of the United States that the signed statement given to the agents by Nessanbaum,[8] taken in conjunction with the corroborative testimony [9] satisfies the alternate requirement of proof by documentary evidence within the ruling of the Wood case, and that therefore the testimony of a living witness was unnecessary. In the Wood case, as we have said, the Supreme Court deemed the evidence of the invoice book of the seller together with the importer's letters to the seller, as constituting adequate evidence, though documentary, to establish perjury. See 14 Pet. at pages 443–444. We think there is merit in the position advanced by the United States in the case at bar.[10] Cf. Jacobs v. United States, supra. But we cannot employ it to sustain the judgment of conviction in the instant case because of the charge given by the court below. The charge omitted all reference to this possible alternative ground. The only standard of proof presented to the jury was the stricter standard requiring two witnesses or one witness plus corroborative circumstances. It follows that the judgment of conviction cannot be sustained.

We conclude that the defendant is entitled to a new trial. We do not direct the court below to enter a judgment of acquittal. The former course seems more appropriate than the latter. See Bryan v. United States, 1950, 338 U.S. 552, 557, 70 S.Ct. 317, 94 L.Ed. 335, and 28 U.S.C. § 2106. Under the circumstances of the instant case the ends of justice will be served more adequately by granting a new trial than by directing the court below to enter a judgment of acquittal.

Accordingly the judgment of the court below will be reversed and the case will be remanded with directions to grant a new trial.

8. The statement given by the Nessanbaums was in reality one statement, signed by both and frequently initialed by both. The phrase "I (we)" was used to indicate that the statement was a joint and several one.

9. We refer, for example, to the testimony of three witnesses that they had seen De Carlo on Nessanbaum's premises the day before the raid was made, the day before Nessanbaum and his wife made the written statement.

10. We will not adjudicate this question now, since to do so, for the reason which appears immediately in the opinion, would constitute the rendering of an advisory opinion.