Joseph DOTO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 12190.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 27, 1955.

Decided March 24, 1955.

Petition for Rehearing Denied
May 11, 1955.

See also 205 F.2d 416.

Mr. William H. Collins, Washington,
D. C., for appellant.

Mr. John D. Lane, Asst. U. S. Atty.,
with whom Mr. Leo A. Rover, U. S.
Atty., and Messrs. Lewis Carroll and
William Hitz, Asst. U. S. Attys., were
on the brief, for appellee.

Before WILBUR K. MILLER, PRET-
TYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant was indicted, tried and convicted on one of two counts charging him with perjury [1] while testifying before the Senate Special Committee to Investigate Organized Crime in Interstate Commerce. The alleged perjurious statement was that he was then a citizen of the United States. The Government says he was and is a citizen of Italy, having been born there and never naturalized in the United States.

■ Doto says the question as to his citizenship was not material to the inquiry which the Committee was authorized to make. We think it was. The Committee was authorized by the Resolution creating it [2] "to make a full and complete study and investigation of whether organized crime utilizes the facilities of interstate commerce * * * and, if so, * * * the identity of the persons * * * by which such utilization is being made, * * * and whether or not organized crime * * operates * * * for the development of corrupting influences in violation of law of the United States * * *." We think the question whether organized crime, if it exists, is operated by citizens or by aliens is on its face a material phase of the investigation thus authorized. The identity, as citizens or as aliens, of persons engaged in organized crime is on its face material to a legislative inquiry into the subject, the essential objective of which is to determine whether legislation is needed and, if so, what sort of legislation.

■ Doto says the evidence was insufficient to meet the standard required in perjury cases. That test was described in Maragon v. United States.[3] The rule is that perjury cannot be proved by the uncorroborated testimony of one witness. The rule has been paraphrased to be that perjury must be proved by two witnesses or by one witness with corroboration, and that paraphrasing has been urged as meaning that at least one live witness must be put on the witness stand. But, as we indicated in Maragon, that interpretation is not accurate. The rationale of the rule is that the falsity of one person's oath cannot be established by another person's oath without more. Documentary evidence, and even so-called circumstantial evidence under some conditions, may be certain beyond doubt.[4]

■ In the case at bar the Government presented testimony and a series of evidentiary documents. We will not attempt in this opinion to describe the items elaborately. It is sufficient to enumerate some of them. They were: (1) A birth register, showing the birth of one Guiseppantonio Doto in Montemarano, Italy, in 1902 of parents whose names were those of appellant's parents. Guiseppe is the Italian equivalent of the English Joseph. A similar register showed the births to the same parents of two boys with the same names as appellant's brothers. (2) Ship manifests showing the voyages to this country of persons with the names of appellant's parents, the mother being accompanied by four sons, one named Joseph and the others with the proven names and ages of appellant's brothers. (3) New York State census records of the family. (4) The testimony of appellant's older brother, who, without directly saying so, clearly identified appellant as the younger brother who came over from Italy with his mother. (5) Official certificates showing that neither

1. 31 Stat. 1329 (1901), D.C.Code § 22–2501 (1951).

2. S.Res. 202, 81st Cong., 2d Sess. (1950).

3. 87 U.S.App.D.C. 349, 187 F.2d 79 (D.C. Cir.1950), certiorari denied, 341 U.S. 932, 71 S.Ct. 804, 95 L.Ed. 1361 (1951). And see Young v. United States, 94 U.S.App. D.C. 54, 212 F.2d 236 (D.C.Cir.1954), certiorari denied, 347 U.S. 1015, 74 S. Ct. 870, 98 L.Ed. 1137 (1954).

4. United States v. Wood, 14 Pet. 430, 39 U.S. 430, 10 L.Ed. 527 (1840); Hammer v. United States, 271 U.S. 620, 627, 46 S.Ct. 603, 70 L.Ed. 1118 (1926).

appellant's father nor his mother was ever naturalized, and a stipulation to that effect as to appellant. The question before the trial judge at the conclusion of the presentation of the proof was whether the cumulated evidence met the stringent requirements of the law as to proof of perjury. The trial judge thought it did, and we agree with him. The evidence we have outlined was not merely the oath of one person. It consisted mostly of documents which, if believed, made the conclusion inescapable, at least as certain as corroborated direct testimony upon this subject matter, *i.e.*, citizenship, would have been.

We have examined the other points urged vigorously and skillfully by counsel for appellant, but we find no error affecting adversely substantial rights of the accused. Specifically as to the more impressive of such points, we think:

■ 1. The prosecutor did not attempt to cross-examine his own witness when he put a series of questions phrased "You don't remember [such-and-such] ?". But, even if such questions were in the nature of cross-examination, the prosecutor claimed the witness was hostile, and the trial judge sustained his position. Appellant's counsel urges that Section 104, Title 14, of the District of Columbia Code [5] applies but was not followed. That section applies only when a party producing a witness is taken by surprise and desires to prove prior inconsistent statements. But this was not a case of being taken by surprise—the prosecutor specifically denied surprise; it was a case of a hostile witness.

■ 2. The prosecutor asked no "pedigree" questions [6] of the witness Antonio Doto and so did not open that line of inquiry to cross-examination. The matter of pedigree testimony, an exception to the hearsay rule, is a technical matter, and the prosecutor seems to have been meticulous in avoiding it.

■ 3. The census records were admissible. They were records taken pursuant to a provision in the New York State Constitution,[7] which required, for election district purposes, an enumeration of inhabitants "excluding aliens". The trial court admitted them only to show name, residence, and status as aliens.[8] Such an official enumeration becomes virtually a register.

■ 4. The police records are a different and more difficult problem. They consisted of a number of entries, at widely separated dates, on police precinct blotters, showing the arrest on various charges of a person with appellant's name and address and containing some biographical data. A witness said the practice was to obtain this data from the arrested person, and the trial court admitted the material upon that theory. Five of the six entries showed the "Nativity" of appellant as "Italy"; one entry showed "Nativity United States". It is urged that these entries were not properly admissible without testimony that each answer as to "Nativity" was furnished by appellant. But we think the error, if there was one, does not require reversal of the judgment. At the most the evidence was cumulative. One blotter entry was thoroughly established by a police officer as a witness of the event.

The judgment of the District Court will be

Affirmed.

---

5. 32 Stat. 540 (1902).

6. 5 Wigmore, Evidence §§ 1480–1503 (3d ed. 1940).

7. Art. III, § 4.

8. 5 Wigmore, Evidence § 1671 (3d ed. 1940).