### SULLIVAN v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. April 8, 1908.)

No. 729.

**1. PERJURY—TRIAL—EVIDENCE.**

On the trial of a defendant, charged with false swearing in a proceeding for the naturalization of an alien, in giving false testimony as to the length of time the applicant had been in the United States. the ship's manifest, showing the date of his entry, is admissible in evidence to establish such fact, on proper proof of identity.

**2. SAME—SUFFICIENCY OF EVIDENCE—DOCUMENTARY EVIDENCE.**

On the trial of a defendant for perjury in falsely testifying that he had known an applicant for naturalization for five years prior to the hearing, during which time he had been a resident of the United States, a ship's manifest, showing that the applicant arrived in this country as an alien less than five years prior to the proceeding, and that in answer to a question propounded by the ship's officers at the port of emigration he stated, not under oath, that he had never been in the United States, is insufficient alone to warrant a conviction.

Lowell, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts.

Harvey H. Pratt (James E. Cotter and Joseph P. Fagan, on the brief). for plaintiff in error.

William H. Lewis, Asst. U. S. Atty., and Asa P. French, U. S. Atty.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

COLT, Circuit Judge. The plaintiff in error, herein called the defendant, was convicted under Rev. St. § 5392 (U. S. Comp. St. 1901, p. 3653), of false swearing in a proceeding for the naturalization of one Molloy. The false swearing charged in the indictment consisted of the defendant's testimony that he had known Molloy for over five years next preceding the hearing in Molloy's case, during which time Molloy had resided at Boston. To certain rulings of the court below the defendant excepted, and he has prosecuted a writ of error to this court.

The defendant's motion to quash was overruled by the Circuit Court, and the defendant excepted. In Betts v. United States, 132 Fed. 228, 231, 65 C. C. A. 452, 455, this court said:

"The law is settled that, with exceptional cases, where the federal courts have conformed themselves to the ancient local practice, error does not lie to the overruling of such a motion."

Passing by the question, however, whether this motion to quash could be properly raised by the bill of exceptions, we think the motion was rightly overruled.

The defendant's exceptions to the introduction of evidence must also be overruled. There was no evidence of his duress, such as to exclude what he said to O'Neil, Waters, and Burke. The manifest of alien passengers was admissible. McInerney v. United States, 143 Fed. 729, 74 C. C. A. 655. There was evidence of the identity of Molloy, the passenger, with Molloy, the applicant for naturalization. No objection was made to the foundation laid by the government for the testimony of Burke concerning the certificate of naturalization seen by him in Molloy's possession. Had objection been taken, the defect, if any existed, might have been cured.

The only substantial question in the case is presented by the defendant's first and sixth requests for instruction, viz.:

"(1) Upon all the evidence in the case the defendant is entitled to an acquittal."

"(6) It is not enough to convict the defendant if the jury believe the statements in the manifest to be true. The government must present another witness or satisfactory corroborative evidence to the effect that the evidence given by the defendant in the naturalization proceedings was false."

The court refused to give these instructions, and the defendant duly excepted to the refusal, which he has assigned in his ninth assignment of errors.

The real question here presented is whether, under the rule of evidence in perjury cases, the manifest of itself was sufficient evidence to warrant the jury in finding a conviction of perjury.

Concerning the rule of evidence in perjury cases, and the reason upon which the rule is based, it is said:

"Presumption is ever to be made in favor of innocence, and the oath of the party will have a regard paid to it till disproved. Therefore, to convict a man of perjury, a probable or credible evidence is not enough; but it must be a strong and clear evidence, and more numerous than the evidence given for the defendant, for else it is only oath against oath." Vin. 16 (K) 328; The Queen v. Muscot, 10 Mod. 193; United States v. Wood, 14 Pet. 430, 438, 10 L. Ed. 527; Roscoe's Criminal Evidence (12th Ed.) p. 735; Regina v. Yates, Car. & Mar. 132.

The essence of the rule is that strong and clear proof is required to disprove the defendant's oath. The courts have always recognized the justice of the rule. The Supreme Court says:

"It is a right rule, founded upon that principle of natural justice, which will not permit one of two persons, both speaking under the sanction of an oath, and presumptively entitled to the same credit, to convict the other of false swearing, particularly when punishment is to follow." United States v. Wood, supra.

Under the rule, the proof sufficient to warrant conviction in a perjury case must be either (1) the testimony of two witnesses contradicting the defendant's oath, or (2) the testimony of one witness and corroborating circumstances, or (3) documentary proof which is equally strong and convincing.

In United States v. Wood the court considered that the documentary proofs in the form of the defendant's letters were proofs "equivalent to the end intended to be accomplished by the rule," and that the rule should not be so applied as to "exclude all other testimony as strong and conclusive as that which the rule requires."

In cases where oral testimony is offered to prove the perjury, corroborative evidence is required. In cases where documentary evidence is offered to prove the perjury, corroborative evidence is not required; but the documentary evidence must be as strong and convincing as where oral testimony is relied upon.

In the case at bar the documentary evidence offered to contradict the defendant's oath was the manifest.

Respecting this manifest Benjamin F. Maricle, a statistician employed in the inspector's department of the Immigration Bureau, testified as follows:

"The lists or manifests were made up by various employés of the steamship company at the point of embarkation from information furnished them by the emigrants. These manifests are delivered to the inspector at the port of arrival, and are taken by him or his deputy, who examines the immigrant. If the answers of the immigrant correspond substantially to the information given by him to the officers of the steamship company at the port of departure, and recorded by this official there, the alien is permitted to land. The result of this examination is checked on the manifest in red ink, and any change or discrepancies noted in the same manner. These manifests are then bound and kept in the office of the immigration officials at Boston. These manifests are the only records of the landing of aliens in our office. During the voyage the steamship's purser checks off the names appearing on the list while making an examination for the purpose of seeing if the persons named in the manifest are on board. After this is completed the master of the ship makes oath to the fact that he has a given number of aliens on board, this oath being recorded on the manifest. The ship's surgeon also certifies to the condition of health of the alien passengers."

The manifest contains 22 questions which are asked each immigrant. These questions relate to name, age, and calling, nationality, etc. Question 15 reads as follows: "Whether ever before in the United States; and, if so, when and where?" To this question, as appears by the manifest, Molloy answered, "No."

The false swearing charged in the indictment, as we have already stated, consisted of the defendant's testimony that he had known Molloy for over five years next preceding the hearing in Molloy's

naturalization case, during which time Molloy had resided in Boston; and the only evidence in contradiction of the defendant's oath is the answer made by Molloy in the manifest to the question whether he was ever before in the United States. An answer by a third party, not under oath, in a document of this kind, is manifestly insufficient under the rule to warrant a conviction of perjury.

And here again we may refer to United States v. Wood:

"It must be conceded no case has yet occurred in our own or in the English courts where a conviction for perjury has been had without a witness speaking to the corpus delicti of the defendant, except in a case of contradictory oaths by the same person; but it is exactly in the principle of the exception, which is by every one admitted to be sound law, that this court has found its way to the conclusion that cases may occur when the evidence comes so directly from the defendant that the perjury may be proved without the aid of a living witness."

"In what cases may a living witness to the corpus delicti of a defendant be dispensed with, and documentary or written testimony be relied upon to convict? We answer: To all such where a person is charged with a perjury, directly disproved by documentary or written testimony springing from himself, with circumstances showing the corrupt intent, in cases where the perjury charged is contradicted by a public record, proved to have been well known to the defendant when he took the oath, the oath only being proved to have been taken; in cases where a party is charged with taking an oath, contrary to what he must necessarily have known to be the truth, and the false swearing can be proved by his own letters, relating to the fact sworn to; or by other written testimony existing and being found in the possession of a defendant, and which has been treated by him as containing evidence of the fact recited in it."

We do not think that the above examples from United States v. Wood were intended to be exclusive, but are given rather as illustrations. The whole spirit and reasoning of the opinion in that case is simply to the effect that when documentary evidence is relied upon in perjury cases it must be of a strong and convincing character, such as is required where the proof is by oral testimony.

The judgment of the District Court and the verdict therein are set aside, and the case is remanded to that court for further proceedings in conformity with this opinion.

LOWELL, Circuit Judge (dissenting). If the court had set aside the verdict of guilty because a majority of the judges deemed the evidence in this case insufficient to warrant the verdict under the rules applicable generally to criminal trials, I should have acquiesced in that judgment upon a simple question of fact. But the opinion of the majority is based upon a rule of law applicable only to trials for perjury and the like offenses. Our difference, therefore, appears to me important enough to justify an expressed dissent.

A rule which requires for conviction of perjury an artificial weight of testimony has strong authority. Ordinarily a jury may convict a defendant if the admissible evidence satisfies all the jurors of his guilt beyond a reasonable doubt. Upon an indictment for perjury, the unsupported oral testimony of one witness has been deemed insufficient, however completely it may convince the jury. This perjury rule, as it may be called, is not based upon an exceptional danger of unjust conviction. It is not analogous to the rule which requires the corrob-

oration of an accomplice because of the suspicion which properly attaches to an accomplice's testimony. The defendant accused of perjury is protected, not because of the inherent weakness of the testimony against him, but because of the artificial sanctity attached under the circumstances to his own oath. In other cases the jurors may accept the oath of a single witness against the defendant, or against the defendant's oath, if they believe the former is telling the truth.

The historical origin of the perjury rule is set out in Wigmore's Evidence, §§ 2032, 2040. It was borrowed, perhaps unwittingly, from the civil and ecclesiastical law as practiced in the Court of Star Chamber. The numerical estimation of testimony prevailed generally in those systems of law upon which the Star Chamber modeled its practice. To convict an accused in that court by oral testimony alone, there must be two witnesses testifying against him. The two-witness rule applied to all trials in which oral testimony was relied upon. When an advancing civilization brought the accused to trial before a trained judge, instead of a popular gathering, the formulary trials of primitive law—the ordeal, the duel, the compurgation—were naturally replaced by a system which graded the value of presumptions and of human testimony according to a scale based upon supposed reason and observation. The system was elaborate, even attaching to the witness' rank in society a graded credibility. The system was inherent in the nature of the tribunal. The expert judge, according to civil or ecclesiastical law, determined issues both of law and fact. His decisions concerning the former must be reconcilable with each other, and he sought to explain his judgments, written or oral, according to rules of general application. To formulate these rules was part of his duty. By analogy he did the like concerning issues of fact. In the search for general rules applicable here, the trained civilian and canonist judges elaborated a Theory of Proofs by which they were enabled to decide issues of fact without the formation of a plain man's opinion thereupon in each case, but solely by weighing presumptions and testimony according to an artificial standard. Esmein, Hist. Proc. Crim. 260.

How complicated the standard became the treatises show. So difficult is it to convict a guilty man according to any Theory of Proofs that the courts resorted to confession induced by torture. See St. 28 Hen. VIII, c. 15. The Star Chamber, by the like necessity, followed their example. Even in the Court of Chancery, where the judge for the most part decides issues of fact like a common-law jury—i. e., according to his actual belief derived from the testimony given in each case—yet there survive from the ecclesiastical procedure certain presumptions and artificial rules of evidence. 52 Am. Law Reg. 537; McCullough v. Barr, 145 Pa. 459, 22 Atl. 962.

The system of jury trials, as practiced at common law, is the opposite of all this. When a defendant put himself upon the country, instead of staking his case upon one of the formulary modes of trial, he took the judgment of the plain men of his neighborhood concerning his guilt or innocence. If they believed him guilty, they convicted him; otherwise, they acquitted him. Before them torture was impossible. They justified their verdict by no statement of their rea-

sons. In determining the issues of fact, they themselves were once the witnesses. While they may not now determine an issue without the evidence of others given thereupon, yet in reaching their decision they follow the methods of judgment which they use in reaching the decisions needed in their everyday lives. They are not required invariably to prefer one kind of evidence to another, nor are they bound to accept or reject evidence according to the number of witnesses who unite in it. In theory, at least, the jurors accept or reject the testimony submitted to them only because they believe or disbelieve it. See the French Code of Brumaire, art. 342; Esmein, 545. If, as is not improbable, some jurors resort in practice to the numerical system of weighing testimony, the method of jury trials prevents this occasional resort from hardening into a rule. Statutes have been passed which require some application of the numerical system in certain cases; but they are not numerous, and are now unlikely to increase.

The original requirement of two witnesses for a conviction of perjury has been so modified in the courts of common law that a conviction may now be had if the oral testimony of one witness can find any material and extraneous support. Though these modifications have rendered the perjury rule the more anomalous, yet the insufficiency of the oral testimony of a single witness is too firmly established for this court to support a conviction thereupon. In the case at bar the defendant seeks to extend the perjury rule to the contradiction of the defendant by documentary evidence. That a conviction may be sustained by purely documentary evidence was settled in United States v. Wood. The qualifications stated in the opinion in that case, as is said by the majority of this court, were not intended to be exclusive, but were given rather as illustrations. An example will suffice to show that this is true. Let us suppose that a witness, being required to give secondary evidence of the contents of a written instrument, has testified that the instrument contained certain expressions. On his trial for perjury he is contradicted by the document itself, which is without the expressions to which he has testified. The case is not within the qualifications of United States v. Wood; but the single piece of documentary evidence affords a contradiction of the defendant so strong and clear as to be absolutely conclusive. Its corroboration would be impertinent.

The majority of the court say that:

"The only evidence in contradiction of the defendant's oath is the answer made by Molloy in the manifest to the question whether he was ever before in the United States. An answer by a third party, not under oath, in a document of this kind, is manifestly insufficient under the rule to warrant a conviction of perjury."

With due deference, I am of opinion that the manifest is much more than the answer of a third party not under oath. The defendant's oath to be contradicted was:

"That he had known Molloy for over five years next preceding the hearing in Molloy's case, during which time Molloy resided in Boston."

The manifest shows, not merely that Molloy stated that he came first to Boston less than five years before the defendant's oath, but it

shows, further, that the proper officer prepared the manifest with Molloy present before him at some place outside the United States, and under circumstances which made it nearly or quite impossible that Molloy should have lived in Boston throughout the five years which the defendant had sworn to. That the manifest was admissible in evidence this court decided in McInerney v. United States, 143 Fed. 729, 74 C. C. A. 655. I think its weight was for the jury.

The introduction of an artificial standard of evidence into a jury trial is a cause of much practical difficulty. The practical limitations of a jury trial should always be kept in mind. A system wherein a definite and different quantitative effect is attached to the several classes of presumptions and evidence, a system wherein "strong circumstances" is a term of art, defined as precisely as robbery or a fee simple, may well require "strong circumstances" to warrant a conviction of crime. Under our system of jury trials the case is far different. In a trial for arson, for example, the jury may have been instructed that the evidence will not warrant a verdict of guilty unless it satisfies them all of the defendant's guilt beyond a reasonable doubt. In a subsequent trial they are instructed that in perjury, as distinguished from arson, "strong and clear evidence" is required for conviction. What meaning can they attach to the words quoted? Is the "strong and clear evidence" required in perjury stronger or weaker than the evidence which was sufficient to convict of arson? Does weak and doubtful evidence warrant a conviction of any crime? Is not confusion of mind the necessary result of a standard like that proposed? To introduce it is to confound trial by jury upon the testimony of witnesses with that antiquarian curiosity, trial by witnesses. 3 Bl. 336.

Considering that the artificial requirement of corroboration has been introduced into jury trials from the two-witness rule of the Star Chamber, contrary to the spirit of the jury system; considering, further, that the two-witness rule in the courts from which it was derived was there without application where the proof offered was documentary, and not oral—I think that the court is not bound to extend the perjury rule so as to cover a case in which it was not originally applicable under the Star Chamber practice. No case binding upon us requires us to disregard the considerations above stated. Difficult as it is to establish a quantitative measure of oral testimony, the difficulty is greater where the oath of the accused is weighed against the evidence of documents. To find a common measure which is quantitative here, recourse must be had to the subtleties of the Roman or of the ecclesiastical law. We depart less from the method of jury trial by holding that the requirement of corroboration in the case of perjury extends only to the corroboration of oral testimony, and that, if the contradiction of the oath of the accused be furnished by a document, it is for the jurors to say, as in other criminal trials, whether the admissible evidence thus furnished satisfies them of the defendant's guilt beyond a reasonable doubt.