**UNITED STATES of America**

v.

**George Peter KLISSAS also known as George Peter Clark.**

**Cr. A. No. 25847.**

United States District Court
D. Maryland.

June 19, 1963.

Joseph D. Tydings, U. S. Atty., and A. G. Murphy, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

James D. Peacock, Baltimore, Md., Jack Wasserman, David Carliner and Wasserman & Carliner, Washington, D. C., for defendants.

R. DORSEY WATKINS, District Judge.

Defendant is charged in an amended one-count information with violation of U.S.C.A. Title 8, Section 1282, in that he, a citizen of Greece and an alien crewman of the Steamship PEGASOS, was found in the District of Maryland on or about November 27, 1961, after having wilfully remained in the United States in excess of the number of days allowed in a conditional permit to land issued to him at Newport News, Virginia, on October 23, 1957. He was arraigned and pleaded Not Guilty.

Thereafter a motion was filed to suppress a statement signed by defendant on

November 28, 1961 at about 1:00 a. m. upon the ground that defendant was then illegally detained without a warrant of arrest, and that the said statement was taken contrary to the Fourth Amendment and the due process clause of the Fifth Amendment. This motion was heard by the late Judge Chesnut on June 8, 1962 and overruled, without prejudice. The case was later assigned to the undersigned for trial, and the motion was renewed. In the absence of a proffer of new evidence the court would probably have been justified, on the basis of United States v. Whiting, 4 Cir. 1962, 311 F.2d 191, 196, cert. den. 1963, 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766, in accepting Judge Chesnut's ruling as final. Instead, the court heard the motion de novo, and at the conclusion thereof made oral findings of fact and conclusions of law, and entered an order denying the motion.

The case was then tried before a jury, which on the third day of trial returned a verdict of guilty. The jury was polled, adhering to its verdict, which was then recorded and the jury excused. Immediately thereafter, counsel for defendant filed and argued a motion in arrest of judgment, and motion for judgment of acquittal. These motions were denied by the court.

Within five days defendant filed a "Motion to Set Aside Verdict, for Judgment of Acquittal and/or for a New Trial," on the grounds that:

"1. The Court lacked power to amend the information herein and try defendant without arraigning him anew.

"2. Inadmissible evidence highly prejudicial to defendant was received at the trial over defendant's objections.

"3. As a matter of law, a reasonable doubt exists as to whether defendant was issued a conditional permit on October 23, 1957."

Of these, the second is the only one discussed at any length in the briefs filed in lieu of oral argument.

1. Amendment of the Information.

On the second day of the trial the Government moved for leave to amend the Information to change the date of issuance of the conditional permit from October 24, 1957 to September 10, 1957. No objection was offered, and the change was made by the court by interlineation.

At the court's suggestion, renewed efforts were made to obtain the manifests of the Steamship PEGASOS for September-October 1957. Certified copies were available on the morning of the third day of trial. From these it was clear that defendant had departed within twenty-nine days (the required time) of September 10, 1957, had re-entered October 23, 1957, and that under established practice his conditional entry permit would have been so dated. The Government then moved to amend the information to change the place of issuance from Norfolk, Virginia to Newport News, Virginia, and to change the amended date of September 10, 1957 [originally October 24, 1957] to October 23, 1957. Over the objections of counsel for defendant, the court allowed the amendments, which were physically made. This is the background on which it is contended that the amendments charge a new offense, for which defendant was not re-arraigned.

Counsel for defendant did not claim surprise, or ask for a continuance or postponement. The second amendment could scarcely have come as a surprise, since:

(a) In the Information as filed, the entry date was given as October 24, 1957.

(b) In his signed statement, defendant referred to his entry as October 24, 1957.[1]

(c) There was testimony that the original of a conditional entry permit [I-95; also sometimes called D-1] is given to

---

[1]. In the signed statement, the figure "4" in October 24, 1957 is clearly a changed one, initialed by defendant. The original figure appears, although not certainly, to have been a "6". The signed statement is further to the effect that the intention to desert was formed on October 26, 1957.

and retained by the alien, and that notations with regard to "revalidation" or subsequent entries are made on this copy only, and no notation is made on the "manifold" copy retained by the Government.[2] In court, defendant's counsel made an obvious comparison of the Government's manifold copy of the I–95 issued to defendant with what had every appearance of being the original in defendant's possession. The Government called for the original, which was understandably refused.

■ Under the circumstances, there was no surprise, no substantial right of defendant was prejudiced, and the allowance of the amendment was within the court's discretion. U.S.A.C. Transport v. United States, 10 Cir. 1953, 203 F.2d 878, 880, cert. den. 1953, 345 U.S. 997, 73 S.Ct. 1139, 97 L.Ed. 1403, reh. den. 1953, 346 U.S. 842, 74 S.Ct. 16, 98 L.Ed. 362; Fredrick v. United States, 9 Cir. 1947, 163 F.2d 536, 547, cert. den. 1947, 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360; United States v. Smith, D.C.M.D.Pa. 1952, 107 F.Supp. 839.

The amendments did not change the gravamen of the crime—presence in Maryland after having wilfully remained in the United States in excess of the number of days allowed in the conditional permit issued to him. Defendant's presence in Maryland on November 27, 1961 was established. That date was more than twenty-nine days after September 10, 1957, October 23, 1957, or October 24, 1957.

2. Admissibility of Evidence.

(a) Government Exhibit 4, Certificate as to Male Registry.

This was issued by the Mayor of Poros, Greece certifying that "KLISSAS Georgios, son of Panagiotes, Greek subject, is registered in our Matriculation Book under S/N 18 and year of birth 1916 at Poros Island, Greece.

"The present document is issued upon the applicant's request for any use."

2. The court has suggested that the Immigration Service give consideration to a change in this practice. Perhaps the simplest method would be to require a

The American Vice Counsul in his certification describes the document as:

"Record of Birth of Georgios Kleisas, son of Panaghiotis, issued by the Mayor of Poros, Greece"

subscribed by the Chief of Bureau, Ministry of Foreign Affairs of Greece, "and that by virtue of said office he is empowered to certify, under the seal of the Ministry of Foreign Affairs of Greece, to the authenticity of the signatures and to the competency of officials of the Greek Government . . ."

Although an English translation of the registration record was offered, a Greek interpreter employed by the Immigration and Naturalization Service was called as a witness and translated the original Greek, first at the Bench, and then from the stand. The witness professed to having seen many such documents, and when asked by defendant's counsel on cross-examination what the document in question was, responded that it was a "birth certificate."

[2] While there was no verbatim correspondence of the evidence with the provisions of Rule 44 of the Federal Rules of Civil Procedure (incorporated by reference in Rule 27, F.R.Cr.P.) that there be a certificate that the attesting officer "has the custody" of the official record, here the "birth certificate", the court considers the totality of the foregoing to be a substantial compliance.

In any event, defendant's signed statement adequately established his birth in Poros, Greece on November 16, 1916; that he and his father and mother were citizens of Greece; and that neither his father nor mother had ever been a resident of the United States.

The court believes the birth certificate to have been properly admitted, but if not, rules that error in its admission would not be of sufficient significance to justify a new trial.

new original and carbon copy for each entry; if not, some notation should be made on some Government record, not merely, and solely, on the seaman's copy.

**(b) Manifests.**

On the second day of the trial, counsel for defendant in cross-examining a Supervising Immigration Inspector, inquired into the existence of certain manifests of the Steamship PEGASOS, and requested that they be produced. The court sanctioned and somewhat amplified the request. The next day certified photostatic copies of the arrival manifest at Newport News, Virginia [3] on September 10, 1957, and arrival at Newport News, Virginia on October 23, 1957 and departure from Baltimore, Maryland on October 29, 1957, were produced, and submitted to and examined by counsel for defendant. Although introduced as Government Exhibits 7 and 8, respectively, they were offered only after defendant's counsel had examined the Supervising Inspector with respect thereto.

Government Exhibit 7 (the arrival on September 10, 1957) showed as a crewman a George Klisas, Greek, D–1. On it being developed that no departure data were given, and no change was indicated in the status of the alien crewmen, defendant's counsel asked that the document be marked for identification. The Government instead offered it in evidence and it was received, counsel for defendant stating: "No objection."

The witness was then shown a certified copy of the manifest for the arrival on October 23, 1957 and departure on October 29, 1957. Objection was made on the ground that the information, as amended, referred to a permit date of September 10, 1957. The information was then amended, as previously indicated, and defendant was given a standing exception.

The arrival manifest showed as a crewman a George Klisas of Greek national-

ity. In column 5, "for use by Government officials only", was a notation indicating [4] a D–1 classification.

A question was then asked as to whether the departure manifest showed any change in the status of an alien seaman. Objection was made on the further ground that the document might be admissible as one kept in the regular course of business, if someone from the steamship company would so testify, but that it was not admissible under the official documents rule.

Further questions of the Inspector developed that in the ordinary course of business the Immigration Service receives copies of manifests dealing with ships with alien crewmen; these are presented on arrival, and on departure a departure manifest must be submitted showing the names of crewmen who have been signed on, signed off, or who have left the vessel; this must be done to secure clearance of the vessel, and is required under penalty of a fine; these are retained [5] as permanent records.

On the departure record it appears that under the heading of those who failed to join the vessel at sailing time from Baltimore, Maryland, is the name of the defendant, with the notation "(Deserted)."

As defendant correctly argues, this notation with respect to him would probably be the mere conclusion of the Master. However, it does show that defendant did not depart with his vessel, as required by the landing permit; and the jury was properly admonished as to the limited significance of this entry.

■ The two manifests comprising Government Exhibit 8 were properly admitted, under the provisions of either or

---

3. The certification refers to "Newport News, Va."; the Manifest is headed "Hampton Rds."

4. A series of notations D–1, N.O.B., and D–2 appear. In a number of instances, a wavy line was drawn in a generally perpendicular direction from the preceding D–1 to the next different notation. Such a line crossed the blank in Column 5 opposite Klissas' name.

The court would, and does, unhesitatingly construe this as the equivalent of a series of ditto marks. The jury was, however, instructed to place its own interpretation thereon.

5. In fact, from time to time the originals are microfilmed and then destroyed.

both of Sections 1732 and 1733 of Title 28 of the United States Code.

The court recognizes that there is substantial authority to the effect that Section 1733 applies to "documents prepared by public officials [6] pursuant to a duty imposed by law—not to documents filed with Government officials and prepared by private parties." Olender v. United States, 9 Cir. 1954, 210 F.2d 795, 801–802, 42 A.L.R.2d 736; see also United Mine Workers of America v. Patton, 4 Cir. 1954, 211 F.2d 742, 751, 47 A.L.R.2d 850, cert. den. 1954, 348 U.S. 824, 75 S.Ct. 38, 99 L.Ed. 649; Matthews v. United States, 5 Cir. 1954, 217 F.2d 409, 50 A.L. R.2d 1187.

Matthews, however, recognized that "reports submitted pursuant to statutory requirements are admissible as official records", and found no inconsistency between its exclusion of reports of sugar sales, and the decisions admitting required written reports, as in Sternberg Dredging Co. v. Moran Towing & Transportation Co., 2 Cir. 1952, 196 F.2d 1002, 1005; or manifests, as in McInerney v. United States, 1 Cir. 1906, 143 F. 729, 736–738, and Sullivan v. United States, 1 Cir. 1908, 161 F. 253, 255.

The distinction between the two lines of cases is clearly stated in Matthews (217 F.2d at 416):

"* * * This distinction can be seen from the fact that in each of the cases in which the courts have held the report amounts to an official act, the person acting had a public duty beyond that placed upon him by the requirement of the statute. In each of those cases the actor was a ship's captain. The court's opinion in the McInerney case, supra, points up this important fact:

" 'It would seem to be settled upon authority that a manifest, or a report, like the one in question, made by a designated officer under the positive requirements of a statute regulating the manner in which such officer shall discharge a quasi public duty, delivered to a proper officer of the government which confers the authority and imposes the duty, and produced by a proper custodian from the proper government office, so far partakes of the character of a public document as to become evidence of the facts which it contains and which it is by law required to set out.' 143 F. 729, 736–738."

A copy of a manifest forming part of a naturalization file was similarly held admissible in Harrison v. Metropolitan Life Insurance Co., 1951, 168 Pa.Super. 474, 79 A.2d 115.

Likewise the manifests would be admissible under Section 1732. They meet the requirement that they be "made as a matter of routine in the regular course of the * * * business" (United Mine Workers of America v. Patton, supra, 211 F.2d at 750); and there is "a circumstantial probability of trustworthiness" (Matthews, supra, 217 F.2d at 417).

3. Reasonable doubt.

■ No exception was taken to the portion of the court's charge on the burden upon the Government to prove beyond a reasonable doubt every element essential to guilt, or to the court's definition of reasonable doubt. Defendant's argument apparently is restricted to the question of whether as a matter of law the issuance of a conditional permit on October 23, 1957 could have been found by the jury. Without repeating the evidence with respect thereto, the testimony of the Supervising Immigration Inspector and the October 23, 1957 arrival manifest adequately justified the jury in finding beyond a reasonable doubt that such conditional permit issued as charged in the amended information.

The Motion to Set Aside Verdict, for Judgment of Acquittal and/or for a New Trial is denied in toto.

6. Column 5 of the arrival manifest, showing the D–1 entries, would qualify even under this limitation.