**UNITED STATES of America,**
**Plaintiff,**

v.

**LYKES BROS. STEAMSHIP CO., Inc.,**
**in personam, and the SS THOMPSON**
**LYKES, her engines, tackle, etc., in**
**rem, Defendants.**

**Civ. A. No. 67–1692.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 18, 1968.

Kathleen Ruddell, Asst. U. S. Atty., New Orleans, La., Thomas L. Jones, Admiralty and Shipping Section United States Department of Justice, Washington, D. C., for plaintiff.

M. D. Yager, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendants.

CASSIBRY, District Judge:

Plaintiff United States of America seeks to recover, under the admiralty and maritime jurisdiction of this Court, damages from the defendants Lykes Bros. Steamship Co., Inc., and its vessel, the SS Thompson Lykes, for delivery of three shipments of bagged wheat flour and corn meal at the port of Kunsan, Korea in October 1966 in shortlanded, wet and otherwise damaged condition. Plaintiff alleged that it delivered the three shipments in good order and condition under three bills of lading[1] to defendants between August 22 and August 30, 1966 at Orange and Houston, Texas and at New Orleans, Louisiana, that the shipments were not delivered at the port of discharge in the same good order and condition as when received and shipped, but on the contrary were damaged to the extent of $3,000 as nearly as could then be estimated. The plaintiff prayed for judgment in its favor for the amount of its claim, with interest and costs and a judgment of condemnation and sale of the SS Thompson Lykes to satisfy the judgment for damages. The defendant Lykes Bros. Steamship Co., Inc., answered claiming the SS Thompson Lykes, her engines, tackle, etc. and admitting only that the shipments had been delivered for transport at the ports designated by plaintiff and had been delivered at the port of discharge, but refused to admit to the allegations relative to condition of the shipments when received by them for transportation[2] and denied the allegations that the shipments were delivered at the port of discharge in shortlanded, wet and otherwise damaged condition.[3]

■■ In order for plaintiff to establish a prima facie case, it must prove that the goods were delivered to the defendant in good order, and that they were either not received or were received in a damaged condition. The burden of explanation and exoneration from fault is thereafter on the defendant carrier. Schnell v. The Vallescura, 293 U.S. 296, 303, 307, 55 S.Ct. 194, 79 L.Ed. 373 (1934); Copco Steel & Engineering Co. v. The Prins Willem Van Oranje, 159 F.Supp. 79 (E. D.Mich. 1957); Schroeder Bros. Inc. v. The Saturnia, 123 F.Supp. 282 (S.D.N.Y. 1954), aff'd 226 F.2d 147 (2d Cir. 1955); Gilmore and Black, The Law of Admiralty, § 3–43, pp. 162–163.

At the trial of the case the plaintiff attempted to prove by documentary evidence only, and without calling any witnesses, that when the SS Thompson Lykes arrived at Kunsan, Korea on October 10, and discharged its cargo during

1. There are three bills of lading, as follows:
   (a) No. 1–27,210 fifty kilo bags of wheat flour, loaded on August 26, 1966 at Orange, Texas;
   (b) No. 15–22,682 fifty kilo bags of wheat flour, loaded on August 22, 1966 at Houston, Texas;
   (c) No. 25–7,168 fifty kilo bags of corn meal, loaded on August 30, 1966 at New Orleans, Louisiana.
   These goods were "donated/furnished" by the people of the United States of America and were consigned to the order of the Ministry of Health and Social Affairs at Seoul, Republic of Korea.

2. The claimant-defendant referred to the bills of lading and contracts of carriage, their provisions, terms, and conditions and stated that it placed plaintiff on full proof of the actual good order and condition of the goods when shipped.

3. Additionally, and in the alternative, the claimant-defendant alleged that if the merchandise sustained any shortage, slackage or damage while in the custody of the SS Thompson Lykes and the claimant-defendant, such shortage, slackage or damage resulted from causes for which the defendants are not liable to the plaintiff.

the period October 11 through 15, 1966, the cargo, because of the failure of the defendant Lykes Bros. Steamship Co., Inc., to properly care for it, suffered damage by torn bags, wet cargo and spoilage requiring rebagging. It was plaintiff's position that the cargo was thus delivered in a condition which breached the contracts of carriage and of defendant's duties and obligations as a carrier of merchandise by water for hire.

In addition to the three bills of lading, which were offered in evidence to show that the carrier received the cargo for shipment, the plaintiff offered for the purpose of showing the loss and damage of the shipments upon delivery at Kunsan, Korea the following documents:

1. An "Over, Short and Damage Report" prepared by Far Eastern Marine Transport Co., Ltd., defendant's husbanding agent;

2. A survey report prepared by the Inspection Company of Korea;

3. Three cargo boat notes;

4. Various Phytosanitary Reports;

5. An Outturn Report;

6. A Certificate of Condemnation.

The defendant objected to the admissibility of the documents on the ground that they were hearsay, having no trustworthiness to show the condition of the cargo at the port of discharge, and that several of them were on their face of little or no probative value because they were undated, or dated at a time remote from the time of discharge of cargo and because they were not properly identified. The legal basis for the relative positions of the parties regarding the question of the admissibility of this evidence was not clear at that time. The Court therefore took the case under advisement for the purpose of determining the question of the admissibility of these documents with instructions to counsel to clarify their positions and provide supporting legal authorities and with the condition that, if the documents were found to be admissible so as to establish a prima facie case in favor of the plaintiff, the case would be reopened for the defendant to present its defense.

The authenticity of the documents had been stipulated by counsel before trial with the condition that they were subject to objections, if any, at the trial, other than to authenticity.

### OVER, SHORT AND DAMAGE REPORT AND SURVEY REPORT

The Over, Short and Damage Report is identified at the top of the page as being made by "Far Eastern Co., Ltd.— Agent for Lykes Lines Agency, Inc." and therein the shipments examined are sufficiently described to identify them as the shipments covered by the bills of lading. The number of bags "found in stow" with covers torn requiring repacking is indicated as to each shipment and the missing and damaged contents are delineated. The Survey Report made by Inspection Company of Korea reports in detail the damage to the three shipments. In answers to the interrogatories propounded to it in the case, claimant-defendant Lykes stated that Far Eastern Marine Transport Co., Ltd. acted as husbanding agent for the vessel at the port of discharge, and caused Inspection Company of Korea to make the survey.

The plaintiff contends that these documents do not offend the hearsay rule because they are admissions by the agent for the principal and are admissible against Lykes in the same way that its own admission would be admissible. The defendant contends that before these reports made by agents can be considered as admissions by the defendant, the plaintiff must prove that the agent's authority to speak *for* the principal was included within the scope of the agency and that the agent was speaking to a third party *for* his principal rather than *to* his principal. The

plaintiff does not deny that it has this burden, and apparently it could not successfully deny this because it appears to be well settled that it is only if the principal authorizes the agent to speak *for* him that he can make no valid exception to the reception of the agent's statements against him for the same reason that he could not take exception to the reception of his own admission. The fact that the agent reported *to the principal* a matter within the scope of his express authority does not make the matter therein admissible against the principal as an admission. If the principal expressly vouches for the report made to him, however, it is then considered as his statement and admissible, or if he is shown to have adopted or approved it the report likewise also becomes his statement.[4]

The plaintiff urges that in this case the reports are admissible as admissions against interest because they were incorporated by defendants into their answers to plaintiff's interrogatories, signed under oath by a vice-president of defendant Lykes. It contends that this follows from Rules 33 and 26(d) (2) of the Federal Rules of Civil Procedure [5] as applied in the case of Gridiron Steel Company v. Jones & Laughlin Steel Corporation.[6]

Before trial the plaintiff directed twenty-eight interrogatories to defendant Lykes Bros. Steamship Co., Inc., which were answered by its vice-president R. T. Reckling. The interrogatories and answers pertinent to the issue here are as follows:

Question 8. Please state whether you had one or more agents, or persons or organizations acting on your behalf, for any purpose in Kunsan, Korea during October 1966.

Answer 8. Yes.

Question 9. If your answer to Interrogatory No. 8 is in the affirmative, please state the following:

(a) The names of each such person or organization;

(b) The general responsibility of each such person or organization. Answer 9(a). Far Eastern Marine Transport Co., Ltd. and Inspection Company of Korea.

(b). Far Eastern Marine Transport Co., Ltd. acted as husbanding agent for claimant-defendant's vessel, and Inspection Company of Korea acted as an independent surveyor at the request of the said husbanding agent.

Question 10. Please state whether a cargo survey, cargo count, cargo tally or other report of discharge was executed on your behalf or for your benefit or information by any of the persons or organizations described in

---

4. Lever Bros. Co. v. Atlas Assur. Co., 131 F.2d 770, 776, 777 (7th Cir. 1942); Nuttall v. Reading Company, 235 F.2d 546 (3rd Cir. 1956); Dilley v. Chesapeake & O. Ry. Co., 327 F.2d 249 (6th Cir. 1964); United States v. United Shoe Machinery Corporation, 89 F.Supp. 349 (D.C.Mass.1950); Warner v. Maine Cent. R. Co., 111 Me. 149, 88 A. 403, 47 L.R.A.,N.S., 830; Carroll v. East Tennessee, 82 Ga. 452, 10 S.E. 163, 6 L.R.A. 214 (1889); Wigmore on Evidence (3d ed. 1940), § 1048, p. 2, §§ 1080, 1080a, pp. 134–144.

5. " * * * Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party. * * * " Rule 33. "At the trial * * * a deposition, *so far as admissible under the rules of evidence*, may be used * * * in accordance with any one of the following provisions: * * * (2) The deposition of * * * any one who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, * * * which is a party may be used by an adverse party for any purpose." Rule 26(d) (2) (Italics mine).

6. 361 F.2d 791 (6th Cir. 1966).

your answers to Interrogatories Nos. 8 and 9, or persons or organizations employed by your agents, regarding the discharge of the shipment of wheat flour and corn meal in question.

Answer 10. A cargo survey report was submitted by Inspection Company of Korea, and an over, short and damage report was submitted or prepared by Far Eastern Marine Transport Co., Ltd.

Question 11. If your answer to Interrogatory No. 10 is in the affirmative, please state the following:

(a) The name, address and relationship of each person executing such a document;

(b) The date of such a document;

(c) The quantity of wheat flour and corn meal from the shipment in question which such a document states was discharged in good condition at Kunsan, Korea;

(d) The quantity of wheat flour and corn meal which such a document states was discharged in a damaged condition at Kunsan from the shipment in question and the nature of the damage to said quantity of wheat flour and corn meal;

(e) Whether you will provide a copy of such a document without a motion to produce; if so, please attach same to your answers to these interrogatories.

Answer 11(a). Inspection Company of Korea, [address in Seoul, Korea] independent cargo surveyor, and Far Eastern Marine Transport Co., Ltd., [address in Seoul, Korea] husbanding agent.

(b). The aforesaid survey report is dated October 26, 1966, and the aforesaid over, short and damage report is undated.

(c). See photocopies of the survey report and over, short and damage report attached hereto and made a part hereof.

(d). See No. 11(c) above.

(e). See No. 11(c) above.

█ The answers to the interrogatories reveal only that Lykes received reports from its husbanding agent and another, and the information sought as to what the documents stated was given by attaching copies of the reports to the interrogatories. There is nothing in the answers to indicate that Lykes was expressly vouching for these reports made to it, or was adopting them or approving them so as to make the reports its statements. They would thus not be admissible against it as admissions. They might have been attached because that was the easiest way to reveal what they stated or they might have been attached as evidencing a willingness to produce copies without a motion to produce.

In Gridiron Steel Company v. Jones & Laughlin Steel Corporation, supra, relied on by plaintiff (the complicated facts of which need not be stated), the court stated that a report prepared by a seller to Jones & Laughlin and attached to answers to interrogatories by Jones and Laughlin constituted admissions against its interest. The opinion does not reveal that any objection was made to the admissibility of the report into evidence or that any agency problem was raised. That case cannot be regarded as determinative of the question raised here, that is, whether admitting in answers to interrogatories that an agent made a report to it and attaching that report, binds the principal as having adopted it or approving it as its own statement.[7]

---

7. Plaintiff relies additionally on some language in footnote 10 in the case of Compagnie De Navigation, etc. v. Mondial United Corporation, 316 F.2d 163, 170–171 (5th Cir.) The language is obscure when considered in context of the facts and issues here, but it contains nothing to indicate that the court intended to depart from the well-established rule that an agent's report to his principal is not an admission by the principal. The case of Rogers v. Edward L. Burton & Co., 137 F.2d 284 (10th Cir. 1943) is inapposite to the question here.

## CARGO BOAT NOTES

As further proof that the shipments were delivered in damaged condition the plaintiff offered three "Cargo Boat Notes" purporting to show that the cargo identifiable as that shipped under the three bills of lading arrived at the port of Kunsan aboard the Thompson Lykes on October 10, 1966 and the discharge of the cargo was completed on October 15, 1966. After the bill of lading is identified by number the shipment is described with remarks indicating the amount, kind and extent of damage. Printed underneath appears, "Delivered and received the above cargo in apparent good order and condition with exceptions as noted in remarks column," and underneath this printing on notes corresponding with bills of lading No. 1 and No. 25 appear three signatures identified by typed lettering as "Chief Checker, SS Thompson Lykes V-31 in Port of Kunsan, Korea," "Chief, Office of Supply ROK, Kunsan, Korea," "Representative, Korea Express Co., Ltd., Kunsan, Korea." The signatures are the same for the note corresponding to bill of lading No. 15, except that the signature for the "Thompson Lykes" is identified as the "Master or Chief Officer."

The defendant contends that these cargo boats notes are unreliable, untrustworthy and of no probative value because they are undated, do not reflect when or by whom they were prepared or from what sources of information they drew. These contentions are correct and furthermore the Court is unable from examining these "Cargo Boat Notes" to determine the nature of the documents, their purpose, by whom they were prepared or for whom they were prepared.

The plaintiff contends that inasmuch as these cargo boat notes were signed either by the "Master or Chief Officer" or by the "Chief Checker" for the SS Thompson Lykes acting on the ship's behalf that these documents are admissible under the cases Compagnie de Navigation, etc. v. Mondial United Corp., supra; Fall v. Esso Standard Oil Co., 297 F.2d 411, 417 (5th Cir. 1961); Cox v. Esso Shipping Co., 247 F.2d 629, 632–633 (5th Cir. 1957). The latter two cases are to the effect that the master of a ship has authority to make declarations to bind the owner, but these cases do not extend to a "Chief Checker." The plaintiff failed to introduce any evidence to show the extent of the authority of the "Chief Checker" to speak for the principal here, and failed to show to whom the "Master" was speaking for the principal. The circumstances surrounding the preparation and making of these "Cargo Boat Notes" has been left so indefinite by the plaintiff that the Court cannot find them of sufficient trustworthiness to be admitted into evidence.

## RECORDS OF THE DEPARTMENT OF AGRICULTURE

The plaintiff contends that the admissions against interest which establish its prima facie case hereinabove declared inadmissible as such are corroborated by duly authenticated and admissible Government records which are admissible as an exception to the hearsay rule. It refers here to the various Phytosanitary Reports offered, which were prepared by Plant Quarantine Inspectors of the Department of Agriculture, an Outturn Report with an Annex thereto prepared by officers of Korea and a Certificate of Condemnation. All of these documents have attached to them a certification of the Department of Agriculture that they are duly authenticated Government records.

Plaintiff argues that these documents are clearly admissible in the circumstances by virtue of 28 U.S.C. § 1733(b), which provides:

Properly authenticated copies of transcripts of any books, records,

papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof.

It contends that their character as official records is established by 22 C.F.R. §§ 211.1–211.10, which prescribe the terms and conditions governing the transfer of agricultural commodities to foreign governments, 22 C.F.R. § 211.1 (a), in this instance the Republic of Korea.[8] The regulations expressly require that [22 C.F.R. § 211.6(f)]:

> The cooperating sponsor shall furnish USAID or the Diplomatic Post with an outturn report on each shipment.

To support its position plaintiff argues that both the cases and the treatises make it quite clear that documents of this nature, kept by virtue of a statutory or regulatory requirement, although not prepared by a government official, come within the official records exception to the hearsay rule. As Professor Wigmore points out [V Wigmore, Evidence, § 1633(a)]:

> It is the official duty, broadly considered, which is taken as the sufficient element of trustworthiness, justifying the acceptance of the hearsay statement.

> In short, a person may (so far as legal theory is concerned) be an officer for the purpose of doing a specific class of facts, and may apart from this be merely a private person. It is therefore proper enough, where by statute such a specific and narrow duty has been created, to regard the statement made under it as stat ments under an official duty within the notion of the present exceptions.

◼ Plaintiff urges upon the Court that this principle applies to the out-

turn report and the condemnation certificate because both of them were prepared by public officers of the Republic of Korea and furnished to the Department of Agriculture in accordance with codified federal regulations. Plaintiff has misunderstood the import of Section 1633(a) supra in Professor Wigmore's work. That section is to the effect that persons not having a general status as an official may because of a specific duty imposed by statute which may be regarded as an official duty, (such as the duty of a clergyman to record or certify a marriage ceremony performed by him) furnish an official record which would be admissible as an exception to the hearsay rule. The Regulation requiring the furnishing of a report by the cooperating sponsor cannot be construed as giving the Korean officials in this case who made the reports any *official status* vis a vis the Government of the United States as to this specific duty. The documents were not prepared pursuant to any *official* duty. They, therefore, cannot be regarded as official records of this Government.

The fact that courts have held ship master's reports, Sternberg Dredging Co. v. Moran Towing and Transportation Co., 196 F.2d 1002 (2nd Cir. 1906); and a ship's manifest, McInerney v. United States, 143 F. 729 (1st Cir. 1906); Sullivan v. United States, 161 F. 253 (1st Cir. 1908); United States v. Klissas, 218 F.Supp. 880, 883–884 (D. Md.1963) to be official records is not persuasive to cause this Court to consider that officials of Korea were performing a public duty connoting official status for this Government when they filed the reports required of them in this case.

The plaintiff has failed to prove a prima facie case and these proceedings will be dismissed.

---

8. The recipient of the commodities, which may be certain voluntary agencies or inter-governmental organizations, as well as foreign governments, are in the regulations described as the "cooperating sponsor." 22 C.F.R. § 211.2(d).