## MATTER OF PANG

In Deportation Proceedings

A-15169631

*Decided by Board February 8, 1966*

(1) Where respondent refused to testify at the reopened hearing conducted for the purpose of establishing an alternate place of deportation, acceptance into evidence by the special inquiry officer at the reopened proceedings of information from respondent's Government of Hong Kong Seaman's Discharge Book was not in error and such information is admissible in evidence.[*]

(2) Since respondent, an illegally landed alien, has offered nothing to controvert the evidence presented by the Government as to his citizenship and place of prior residence abroad and he has remained mute in the two hearings that have been accorded him, he has had adequate opportunity to be heard and his request for further hearing is denied as frivolous.

We dismissed respondent's appeal on June 9, 1965, after full consideration of the entire record. *Matter of Pang*, Int. Dec. No. 1479. He was ordered deported to the Republic of China on Formosa, but that government refused to accept respondent. Therefore, on September 27, 1965, we directed that the hearing be reopened in order that the record might include additional evidence concerning an alternate place of deportation. At the reopened hearing the alien continued to refuse to testify. The special inquiry officer now directs that the respondent be deported to Hong Kong. Counsel again appeals, but he requests no form of relief, except that "the matter be sent back for further testimony at the hearing level." The appeal will be dismissed.

We will not restate the facts set forth in our previous decision, but that decision is incorporated herewith. The record now contains two pieces of evidence supporting the order of the special inquiry officer to deport respondent to Hong Kong. Respondent's affidavit, Exhibit 2, dated November 6, 1964, given to an investigator for the Immigration Service, was in the record when the case was here in

---

[*]Reaffirmed, 368 F.2d 637.

June 1965. Respondent told the investigator that he is married to a Chinese woman living in Hong Kong, that they have two children, ages 5 and 7, that he is a citizen of China, born at Kwantung, China, that he last arrived in the United States at New York on September 4, 1962, on the SS "Clydefield" as a member of the crew, was refused permission to go ashore by the immigration officers, but went ashore in violation of that order. We found in our previous decision over the objections of counsel that this statement was admissible in evidence under Title 8, Code of Federal Regulations, section 242.14(c), and under judicial decisions and prior decisions of this Board.

At the first hearing the special inquiry officer refused to accept the Service offer of the respondent's Government of Hong Kong Seaman's Discharge Book No. 2843. We implied that the offer was proper, citing *Peirera v. Murff*, 159 F. Supp. 81 (D.C.N.Y., 1958), wherein this Board had disregarded a passport offered under similar circumstances, but the court commented that the passport was properly introduced into evidence. At the reopened hearing the trial attorney again offered this document or information from it. The special inquiry officer accepted the offer. He did not place the book in evidence, but read the information into the record (R-4). The book shows the name of Pang Chiu, his rating as a sailor, his date of birth as 2-10-1930, and the date of issue as 7-12-54. The special inquiry officer stated that it contains "a good likeness" of respondent. It shows respondent's place of birth as Kwangtung, China, that he was engaged on June 24, 1961, at Hong Kong on the SS "Hindustan" and discharged April 12, 1962 at Hong Kong, that he was signed on the SS "Clydefield" at Hong Kong on June 13, 1962, and there is no notation concerning discharge. Exhibit 2 also states that respondent came to the United States on the SS "Hindustan" in 1961 or 1962 and was refused shore leave and that he arrived at New York on September 4, 1962, on the SS "Clydefield". The fact that his book contains no notation that he was discharged from the 'Clydefield" is consistent with his statement that he arrived in New York on that ship on September 4, 1962, and did not depart with his vessel.

In his brief accompanying the appeal counsel again challenges the proceeding, stating that the rules of evidence have been ignored, that the "resident alien" is entitled to a fair hearing, that the admission into evidence of information from the respondent's Hong Kong seaman's discharge book is error, that there was failure to authenticate this document and that no foundation as to the document itself was laid. Counsel contends that the information contained in the seaman's book was hearsay, and that without the book there is nothing

in the record to support the special inquiry officer's order of deportation to Hong Kong. The special inquiry officer overruled counsel's objections.

On advice of counsel respondent elected to remain mute at the reopened hearing, as he had at the original hearing. Counsel contends that respondent should be endowed with the same privilges and immunities as the defendant in a criminal proceeding who is shielded with the cloak of innocence and cannot be compelled to give testimony against himself. This contention was discussed and dismissed by *Bilokumsky* v. *Tod*, 263 U.S. 149, wherein Mr. Justice Brandeis stated:

> Silence is often evidence of the most persuasive character . . . there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak . . . A person arrested on the preliminary warrant is not protected by a presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing mute.

So far as we are aware, the rule is still that elucidated in *Bilokumsky* v. *Tod*. *United Etates* v. *Sahli*, 216 F.2d 33, 39 (7th Cir., 1954), and *Cateano* v. *Shaughnessy*, 133 F. Supp. 211 (S.D.N.Y., 1955), rely on *Bilokumsky* and reject the argument that a person in deportation proceedings should be surrounded by the same safeguards as a person charged with crime. In *Caetano* the court says, "Sufficient answer to this position is that the courts have uniformly held to the contrary", citing cases.

In *Matter of Psarelis*, 7 I. & N. Dec. 133, wherein the Board held that the alien's preliminary sworn statement may be relied upon as evidence of deportability, there was no other evidence but the inference drawn from the alien's silence. In *Matter of Rupino-Soares*, 7 I. & N. Dec. 271, and *Matter of Bulmer*, 5 I. & N. Dec. 738, we also held that refusal to testify without legal justification concerning matters of alienage, time and place of entry, and lack of proper documents, justifies the drawing of unfavorable inferences.

We are not left in the instant case to draw inferences from respondent's silence. There is sufficient evidence to support a finding that he is an alien, illegally in the United States, and deportable as such. The information taken from the seaman's book was admissible for the purposes for which it was used here. We have no doubt that one of its purposes is to establish the identity of its owner.

In *Abel* v. *United States*, 362 U.S. 217 (S.Ct., March 28, 1960), Justice Frankfurter discussed the legality of the seizure and use of documents belonging to an alien under deportation proceedings— forged birth certificate, a certificate of vaccination, a bank book, *etc.*,

all in false names, and said, "We can see no rational basis for excluding these relevant items from trial." *Doto v. United States*, 223 F.2d 309, 310 (D.C. Cir., 1955), found that a series of evidentiary documents presented by the Government were admissible; among them was a birth register from Italy, a manifest showing voyages to this country of persons with names of appellant's family members, New York State census records including the family, including one with the name of defendant. The court stated (per Judge Prettyman) that this documentary evidence, if believed, made the conclusion as to respondent's alienage inescapable.

This alien landed illegally in the United States. He offered nothing to controvert the evidence presented by the Government as to his citizenship and his place of prior residence abroad. Counsel's request that this case be returned for further hearing is frivolous when respondent has declined to testify in the two hearings that have been accorded him. He had adequate opportunity to be heard. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and is hereby dismissed.