## BARKER v. UNITED STATES.
### No. 13181.

United States Court of Appeals
Ninth Circuit.

Aug. 21, 1952.

Rehearing Denied Oct. 22, 1952.

See also, D.C., 11 F.R.D. 421.

David B. Fyfe, San Rafael, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., Macklin Fleming, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

DENMAN, Chief Judge.

Barker appeals from a judgment convicting him of perjury charged to have been committed by him in his prosecution for the use of the mails to defraud. The indictment in the mail fraud trial was introduced in evidence. It charged a scheme to defraud by persuading persons by false representation in documents mailed to them to give Barker moneys to purchase valuable timber lands at tax sales to which they would receive unimpeachable title and likely profits.[1]

1. The indictment reads:
   "First Count:
   The Grand Jury charges:
   "1. Prior to the 9th day of July, 1945 and continuing to the date of this indictment, the defendant, Ovieto O. Barker devised and intended to devise a scheme and artifice to defraud a class of persons desirous of purchasing title to parcels of land in the States of California, Oregon and Washington, and to obtain money and property by means of the follow-

The perjury Barker is charged to have committed in the trial of that case is that he knowingly and falsely testified he on one day caused to be cut by stencil, assembled and stapled a five-page document, Exhibit D-56 in evidence in the mail fraud case, of which he had mailed copies on the same day to all the subscribers of his publication, California Tax Sales. The true facts, the indictment states, were that he fabricated the 5th page of Exhibit D-56 at a time other than at which he had mimeographed the first four pages and at a time subsequent to 1946, and defendant had never mailed the fifth page to any of his subscribers during the year 1946, and the fifth page was not a part of his original publication, and Exhibit D-56 was not his file copy of the original publication.

At the trial below, Exhibit D-56 was offered in evidence and objected to on the ground that it was not material to the issue in the mail fraud trial in which it had been introduced. The judge reserved his ruling until he had examined other exhibits including the mail fraud indictment, when he overruled the objection and admitted Exhibit D-56. Barker assigns this as error.

The first four pages of that document state the false representations charged in the indictment. The fifth page puts limitations on these statements rendering them innocuous. An examination of Exhibit D-56 shows clearly:

(a) That the five pages were not stapled at the same time, but that the first four pages were stapled at one time and the fifth attached at a different time;

(b) That the stencil cutting on the four pages is so markedly different from that on the fifth that the latter page must have been cut at a time much subsequent to the first four;

(c) That the paper on the fifth page was of a different character from that on the first four;

---

ing false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be false when made; that those who sent defendant moneys would obtain and had obtained good title to valuable lands containing valuable timber, which lands would be and had been purchased at state tax sales; that the defendant had acted and would act as the agent of the purchasers when purchasing lands for the account of those sending him money; that defendant's only profit would be commissions on the sale of timber from these lands; that lands to be purchased were state tax-deeded lands forfeited by distressed owners and available at bargain prices; that those who sent defendant moneys would become and became the owners of lands purchased and would and did secure unimpeachable title thereto; that defendant used moneys sent to him for the purpose of purchasing lands in the names of the senders, and that the lands so purchased were of great value and contained valuable timber; that those sending defendant money would receive and had received deeds evidencing good title to valuable lands; that purchasers of lands through the agency of defendant would make and had made large profits from the purchase and sale of land and timber by means of the agency of defendant; that deeds mailed to purchasers of lands represented good ti-

tle to lands purchased; that land purchased through the agency of defendant would be guaranteed as to title and as to entire satisfaction; that a purchaser could get his money back in full if he were dissatisfied for any reason whatsoever; that defendant had a waiting list of timber buyers and facilities to log and sell timber from lands purchased by those sending moneys to defendant; that a purchaser of lands through the agency of the defendant would usually receive more from the sale of timber on the land than he would pay for the land; that purchasers of land who deeded the land back to defendant would have their lands consolidated with those of other purchasers, their timber logged, the lands resold, and payments made for sales of lands and timber on the first and fifteenth of each month.

"2. On the 6th day of December, 1947, in the Northern District of California, the defendant, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, caused to be placed in an authorized depository for mail matter at San Rafael, California, a letter addressed to Mrs. Jessie Jean Johnson, 146 North 4th Street, San Jose, California, to be sent or delivered by the Post Office Establishment of the United States."

This is followed by 24 counts of the sending of similar letters to other persons.

(d) That the creases on the first four pages match while those on the fifth page do not; and

(e) That the stencil used to prepare pages one to four and used to prepare page five appears to be the same. However, the condition of the type with respect to the letter "h" varied. In the first four pages of the document, approximately 170 "h's" were used and on these pages the "h" was in proper condition. On page five the "h" appeared with a broken right serif, and some 75 "h's" on page five bore this characteristic.[2]

We hold that the Exhibit D-56 was evidence material to the issues in the mail fraud case and that it was properly admitted at the instant trial.

Barker next contends that there is not the necessary evidence for a conviction on a charge of perjury because there is no *witness* testifying to the perjury and the remaining evidence is purely circumstantial. We do not agree. Documentary matter such as Exhibit D-56 written by the person charged is the direct proof of the crime. It need not be by personal testimony. United States v. Wood, 14 Pet. 430, 440, 10 L.Ed. 527. Cf. Hammer v. United States, 271 U.S. 620, 627, 46 S.Ct. 603, 70 L.Ed. 1118. In Radomsky v. United States, 9 Cir., 180 F.2d 781, we stated the rule at page 783 to be:

"In the federal cases in which documents have been used to establish perjury, the documents have, for practical purposes, directly established the falsity of the statement under oath."

This evidence is corroborated by the testimony of Mrs. Pitts, a subscriber to California Tax Sales, that she had received an issue of the October 10, 1946 publication and a number of others. Some she had destroyed and some she had turned over to Post Office Inspector Stahl. Stahl testified he received from Mrs. Pitts the October 10, 1946 edition and that it contained

no more than the first four pages of the deceptive statements. There is no merit in Barker's contention that the perjury was not sufficiently proved.

The judgment is affirmed.

---

2. Inspector Conway later testified that he had examined a subsequent issue of "California Tax Sales," that of October 25, 1946, purportedly prepared subsequent to page five on the same typewriter, and found the letter "h" in that issue to be in the perfect order of the first four pages of Exhibit D-56 of the previous October 10.