Joseph STASSI, Sr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 24734.

United States Court of Appeals
Fifth Circuit.

Aug. 29, 1968.

Herbert A. Warren, Jr., Hilton R. Carr, Jr., Miami, Fla., Percy Foreman, Houston, Tex., Carr & Warren, Miami, Fla., for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty., Fred M. Vinson, Jr., Asst. Atty. Gen., Beatrice Rosenberg, Paul C. Summitt, Attys., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before COLEMAN and CLAYTON*, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

The appellant, Joseph Stassi, Sr., was convicted for violating Title 18, § 1621, United States Code. The indictment was in one count and charged essentially, that Stassi on January 26, 1966, falsely testified under oath as to a material matter before the United States Com-

missioner in the Southern District of Florida at Miami. At the time Stassi testified, the commissioner was conducting, at the instance of Stassi and his counsel, an inquiry to determine, among other things, an appropriate amount for an appearance bond. The indictment set forth the following questions and answers before the commissioner:

" 'Q. Do you have a United States Passport under the name of a Michael Frank Dorsi—D-O-R-S-I?

A. No, sir, I got no passport.

Q. You do not?

A. No, sir.

Q. Did you get such a passport?

A. No, I never got a passport.

Q. You never obtained such a passport?

A. No, sir.' "

\* \* \* \* \* \*

" 'Q. (By Mr. Bates [Asst. U. S. Attorney]) Just going back here, as I understand you, you did not obtain or have anything to do with an issuance of a passport in the name of a Michael Frank Dorsi—a U. S. passport F288402, issued April 10, 1965, in Washington, D.C.?'

A. No, sir."

\* \* \* \* \* \*

" 'THE COMMISSIONER:

Let me ask a couple of questions before you make any statement. Have you ever had a passport?

THE WITNESS:

No, sir.

THE COMMISSIONER:

Do you know anything about the questions asked you by the Government dealing with a passport in Washington, D. C.?

THE WITNESS:

No, sir.

---

\* The Honorable Claude F. Clayton was a member of the panel hearing the arguments and participating in the decision of this case. The decision of the Court, as reflected by the opinion, was unanimous, but due to the illness of Judge Clayton, occurring subsequent to the arguments and submission, he has not considered this formal opinion.

THE COMMISSIONER:

Did you ever pose for any passport pictures?

THE WITNESS:

I have had pictures taken, but I never applied for a passport.

THE COMMISSIONER:

And is it my understanding that you do not have a passport at this time?

THE WITNESS:

Correct.' "

The indictment then charged that, as a matter of fact, Stassi had on April 7, 1965, applied for a United States passport under the name of Michael Frank Dorsi and had obtained such a passport on or about April 10, 1965. After a 22-day trial, Stassi was convicted and upon the conviction by the jury, was duly sentenced by the District Judge.

Stassi was arrested in the Miami area of the Southern District of Florida in January, 1966, under an arrest warrant based on an indictment that had been returned in Houston, Texas, in March, 1963. As stated, the hearing before the commissioner, during which Stassi testified as set forth above, was upon Stassi's petition to reduce his bond pending completion of proceedings to remove him from Miami, Florida, to Houston, Texas. Stassi was represented at the hearing before the commissioner by three attorneys of his own choice. There is no question but that the matter of Stassi's having received a passport under the name of Dorsi in 1965 was a matter of material interest to the commissioner with respect to the advisability of reducing Stassi's bond.

The evidence offered by the Government upon the tiral for perjury allegedly committed before the commissioner, reflected that an application for a passport in the name of Michael Frank Dorsi was made in person in the office of a naturalization clerk in Hudson County, New Jersey, on April 7, 1965; the application for the passport was signed in three places. Handwriting experts, on the basis of documents known to have been signed by Stassi, testified that Stassi was the person who had signed the passport application. The Government's evidence further reflected that attached to the application for the passport was a photograph identified as being a picture of Stassi, then known to the witness in 1964 as Philip Stazzone. A Government's witness also identified a photograph as being a photograph that had been taken at a studio in West New York, New Jersey, about May 1964, which was identical to the passport photograph. The evidence further reflected that in May or June, 1963, Stassi took up residence in New Jersey under the name of Philip Stazzone. Another witness who knew Stassi under the name of Stazzone identified the Government's photograph as being a picture of the man he knew as Stazzone, but who was, in fact, Stassi. The naturalization clerk did not recognize Stassi at the trial. However, she testified that the application was signed by the person who appeared and applied for it and that she would not have accepted the application had the appearance of the applicant not coincided with the picture attached thereto. The application for the passport, after being forwarded to the State Department, formed the basis for the issuance of the passport in the name of Michael Frank Dorsi on April 10, 1965. State Department records reflected that it was deposited in the mail on April 14, 1965, addressed to Dorsi in West New York, New Jersey. The passport was not returned or reported undelivered by the United States Post Office Department.

I.

■■ Stassi's first argument on this appeal is directed to the sufficiency of the indictment. The indictment charges that the statements of Stassi were false in that Stassi applied for a passport under the name of Michael Frank Dorsi and had under such name obtained such a passport. It is evident from a reading of the indictment that it meets the standard of Rule 7(c), Federal Rules of Criminal Procedure, as being "a plain,

concise and definite written statement of essential facts constituting the offense charged." The indictment tracks the language of the statute, setting forth, as above noted, the material parts of Stassi's testimony in the bail bond hearing in which Stassi denied that he had applied for, obtained, or had anything to do with the passport issued in the name of Michael Frank Dorsi in April, 1965. In his sworn testimony before the commissioner, Stassi unequivocally denied obtaining the Dorsi passport. It is not essential that all the testimony set forth in an indictment be false. As a matter of fact, it is better practice, both from the standpoint of the Government and the defendant, to set forth enough of the testimony immediately before and after the alleged false statements to give some coherent context to the alleged false statements. Contrary to appellant's argument, more than one allegedly false statement may be set forth in a single count of an indictment. Arena v. United States, 9 Cir., 226 F.2d 227, cert. denied 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830; United States v. Otto, 2 Cir., 54 F.2d 277. The trial court, therefore, properly denied Stassi's motion to dismiss the indictment.

## II.

■ Appellant further contends that the evidence upon the trial of the case failed to measure up to the standards required in a perjury prosecution. Appellant argues the "two witness" rule. However, the "two witness" rule is inapplicable where, as was the case here, the Government's evidence of falsity rested predominately on documentary evidence. United States v. Bergman, 2 Cir., 354 F.2d 931; Barker v. United States, 9 Cir., 198 F.2d 932. The document itself (the passport) constituted sufficient "direct" evidence to support the conviction. United States v. Wood, 14 Pet. 430, 39 U.S. 430, 10 L.Ed. 527. The Supreme Court in the Wood case on this point stated:

"* * * that circumstances, without any witness, when they exist in documentary or written testimony, may combine to establish the charge of perjury; as they may combine, altogether unaided by oral proof, except the proof of their authenticity, to prove any other fact connected with the declarations of persons, or business of human life. That principle is, that circumstances necessarily make up a part of the proofs of human transactions; that such as have been reduced to writing in unequivocal terms, when the writing has been proved to be authentic, cannot be made more certain by evidence *aliunde;* * *"

■ Here, not only did the Government's expert witnesses have a group of signatures by appellant in several names, including Stassi, but also had one known signature as "Michael Frank Dorsi." The expert opinions were as directly probative as the typewriting expert testimony held to be sufficient in United States v. Collins, 2 Cir., 272 F.2d 650, cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619. The general rule on this point in perjury prosecutions requires that the evidence be measured for directness by the yardstick of "whether the evidence is of a quality to assure that a guilty verdict is solidly founded." United States v. Collins, supra; Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; United States v. Bergman, 2 Cir., 354 F.2d 931. Here, the record is clear that the evidence offered by the Government in the prosecution of this perjury case—both as to handwriting and photograph—"was direct" in the sense required by the rule and this "direct" evidence was further corroborated by the circumstances showing Stassi's use of the name Dorsi in other activities, such as the purchase and trade of Rambler automobiles in New Jersey in 1965. The essence of the charge in this case against Stassi was that he, while under oath, wilfully and falsely denied having anything to do with the application for, the issuance of, or the receipt of a Dorsi passport. The evidence that he did was more than suf-

ficient to withstand the motion for judgment of acquittal.

### III.

██ Stassi requested the following charges be given to the jury:

*"Defendant's Requested Instruction No. 6*

"You are instructed that in this case the government has the burden of proving by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the defendant knowingly and intentionally swore to a falsehood. The government's proof must be by substantial evidence excluding to the satisfaction of the jury every other hypothesis than that the defendant in testifying as he did purposefully misstated the fact knowing it to be false and untrue. (quoted from Van Liew v. U. S., 5th Cir., 321 F.2d 674).

*"Defendant's Requested Instruction No. 2*

"In a prosecution for perjury there must be direct and positive evidence of the alleged falsity of the statement under oath. Circumstantial evidence of such alleged falsity, no matter how persuasive it may seem, is not sufficient. If you find that the government has failed to prove to your satisfaction, by direct and positive evidence, beyond a reasonable doubt the alleged falsity of the defendant's statement under oath, your verdict must be not guilty. Radomsky v. U. S., 9th Cir., 180 F.2d 781; Sigman v. U. S., 9th Cir., 320 F.2d 176."

Each of these instructions was refused, and this refusal is now the basis for one of appellant's claims of error. The Court's charge, as set forth in the record now presented, reflects that the trial judge actually charged that the falsity of the statements that form the basis for the prosecution had to be established beyond a reasonable doubt by two witnesses or "by a single witness and independent corroborative evidence." In view of the evidence that had been presented, the trial judge properly refused to charge that circumstantial evidence alone is not sufficient to support a perjury conviction. The district judge made it clear that the burden rested upon the Government to prove Stassi guilty beyond a reasonable doubt and that, before the jury could convict upon an indictment that charged perjury within the meaning of Title 18, § 1621, United States Code, the false statement or statements had to have been made with criminal intent and with a specific intent to deceive and had to be made "wilfully, deliberately, knowingly and corruptly * * *." It was not necessary for the trial judge to tell the jury in addition that the evidence had to exclude every other reasonable hypothesis than that of guilt. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Gregory v. United States, 253 F.2d 104 (5th Cir. 1958). See also: Movible Offshore Company v. Ousley, 346 F.2d 870 (5th Cir. 1965).

### IV.

██ Appellant also argues to this Court that the United States Commissioner failed to inform him of his rights as required by Rule 40(b)(2) of the Federal Rules of Criminal Procedure: that he was not required to make any statement and that any statement made by him might be used against him. In this connection, the United States Commissioner made this statement at the hearing conducted before him in January, 1966:

"Counsel for the defendant has waived any and all rights that I may advise this defendant as they have advised me that they have fully advised the defendant of all his rights. And being competent counsel, I accept their word."

We are of the opinion that Rule 40 was fully complied with when the commissioner inquired of Stassi's retained counsel in Stassi's presence whether they had fully advised him of all his rights and then received from Stassi's counsel an affirmative answer, accompanied by an express waiver of further warnings by

the commissioner. This was a bail hearing convened at Stassi's request. The hearing was not held as a commitment proceeding contemplated in Rules 5 and 40 of the Federal Rules of Criminal Procedure, under which rules the arresting officers must bring the defendant before the commissioner for the protective purpose of advising the defendant of his constitutional rights and ensuring that legal counsel is available. Here, the commissioner's duty was to conduct the bail hearing, as initiated by Stassi and his counsel, and to let Stassi and his counsel conduct his case in such a manner as they considered appropriate. The rule that witnesses who appear before grand juries do not have to be advised of their rights, and the corollary that failure to so advise does not preclude prosecution for perjury before the grand jury, is applicable to appellant's contention. See, e. g., United States v. Winter, 2 Cir., 348 F.2d 204, cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360; United States v. Orta, 5 Cir., 253 F.2d 312, cert. denied 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156.

## V.

■ The next point appellant argues relates to the manner in which the jury had been selected in the Southern District of Florida. This point was raised by defendant-appellant through a motion to dismiss the indictment based on an objection to the "array of grand jurors." Basically, the motion, which was denied by the trial judge after a hearing, contended that the jury commission breached its affirmative duty to develop and use a system which would result in a fair cross section of the community being placed on the jury rolls. The evidence taken in connection with this motion reflected that the system of selecting grand jurors in the Southern District of Florida was established in 1962. At that time all the jury boxes were purged, and the intent of the Court's action in ordering the boxes emptied and refilled was to devise an impartial system without regard to any restrictions or exclusions. In the Miami Division (the one we are now concerned with) the clerk, under specific instructions from the district judges, used a comprehensive set of city directories covering urban, suburban and rural areas. The total number of names selected was based on general population figures. For instance, for the February 1965 list, 3,000 names were selected. These names were selected from the directories within alphabetical divisions on an at random basis without regard to occupation, color, race, religion, sex or any other criteria. Questionnaires were sent out to the selected persons for the purpose of obtaining information required in order to determine whether those who had been selected on the at random basis possessed the necessary statutory qualifications. After the questionnaires were returned, the names of these qualified individuals went into a pool comparable, as this Court understands the procedure, to the master jury wheel required by Public Law 90–274, 82 Stat. 53, passed by the Congress of the United States on March 27, 1968. As a matter of fact, the system as followed in the Southern District of Florida in selecting the grand jury that returned the indictment against the appellant in this case was surprisingly similar to the system Congress has now determined should be used in each of the district courts throughout the United States. The system followed in the Southern District of Florida in no way contemplated any conscious effort to include or exclude any person or group of persons based upon personal characteristics, status or circumstances. The district court, its clerk and the jury commissioner had established a nondiscriminatory method of selecting jurors that was designed to and, from the evidence offered in support of the motion to dismiss the indictment based on objections to the array of grand jurors, did represent a fair cross section of the community. Nothing more is required. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Brooks v. Beto, 5 Cir., 366 F.2d 1; Mobley v. United

States, 5 Cir., 379 F.2d 768, and Rabinowitz v. United States, 5 Cir., 366 F.2d 34.

## VI.

■ Appellant's final argument is that the trial judge erred in refusing to make available for inspection the grand jury testimony of a United States State Department representative. Defense counsel did timely request that the grand jury testimony of this witness be made available for use on cross-examination. The trial court refused the request. Defense counsel did not, in support of their motion, make any effort to show a particularized need for the disclosure of this grand jury testimony. Instead, Stassi's counsel stood on the proposition that their client had a right to have his counsel peruse the minutes of the grand jury in search of inconsistencies. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, relied upon by appellant, did not abolish the requirement, where a motion to inspect grand jury minutes is made, that a showing be made of a particularized need. Since no such showing was made in support of the motion, the trial court was correct in denying same.

## VII.

After arguments and the submission of this case, the United States Attorney for the Southern District of Florida filed with the Clerk of this Court sealed envelopes containing copies of certain logs pertaining to electronic surveillance of a person identified as "Joe Rogers," who, according to the Government, "may be identical with appellant Joseph Stassi." As reflected by these logs, these electronic surveillances, and the conversations in which "Joe Rogers" participated, took place in 1962. This action on the part of the Government is undoubtedly precipitated by the *per curiam* opinion of the United States Supreme Court in Kolod, et al. v. United States, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968). In *Kolod*, a petition for rehearing was filed seeking to have set aside the order

of the Supreme Court that denied Kolod's application for the writ of certiorari. The petition for rehearing alleged that Kolod's counsel had been informed after the petition for the writ of certiorari was filed that Kolod's conversations had been monitored through electronic surveillance conducted by a governmental agency. The Supreme Court invited the Solicitor General to respond to the petition for rehearing. The Court interpreted the Solicitor General's response as admitting the electronic surveillance but "justifying nondisclosure on the basis of the Department's determination that the information obtained was not arguably relevant to this prosecution." The Supreme Court held that, "We cannot accept the Department's *ex parte* determination of relevancy in lieu of such determination in an adversary proceeding in the District Court."

A study of the logs now filed reflect, without question, that the conversations in which "Joe Rogers" participated and were overheard by Government agents are clearly unrelated to the case now before this Court. After an examination of the tendered logs *in camera,* we now make such a determination in lieu of remanding the case to the District Court for that purpose. This procedure has recently been approved by the Seventh Circuit in United States v. Battaglia and Evans, April 10, 1968, 394 F.2d 327. As the Seventh Circuit pointed out in *Battaglia,* it is not unusual for appellate courts "to determine relevancy as a matter of law." This is all the District Judge could do upon remand. Accordingly, there is no purpose to be served in remanding for the purpose of the District Judge's reviewing the logs now filed with the Court. We do, however, direct the Clerk of this Court to reseal the envelopes containing the logs and to make said envelopes a part of the record in this case for use in such other appellate review as may be sought.

We are clear to the conclusion that Stassi received a fair trial, free from substantial error. The case is therefore

Affirmed.